STATE OF NORTH CAROLINA v. ARDELL STURDIVANT

No. 1

(Filed 3 November 1981)

**1. Criminal Law § 84; Indictment and Warrant § 6.2— probable cause for is-
suance of arrest warrant—evidence obtained from defendant's person**

A warrant issued for defendant's arrest for rape was based on probable
cause where an officer submitted an affidavit to the issuing magistrate detail-
ing the victim's statements to him about the sexual assaults and the descrip-
tion of the assailant and stating that the officer had driven the victim around
the area of the alleged incident and that she had pointed out defendant's
house, the dirt road she had driven on and the tobacco barn where she had
been raped. Since defendant was arrested pursuant to a warrant based upon
probable cause, evidence obtained from his person after he was lawfully taken
into custody was constitutionally admissible at his trial.

**2. Rape § 1— first degree rape—employment of deadly weapon**

The rape statute, G.S. 14-27.2, no longer requires an express showing by
the State that a deadly weapon was used to overcome the victim's resistance
or to procure her submission to make out a case of the crime in the first
degree; rather, the current statute simply necessitates a showing that a
dangerous or deadly weapon was employed or displayed in the course of a
rape.

**3. Rape § 5— first degree rape—employment of deadly weapon—sufficiency of
evidence**

The State's evidence was sufficient to convict defendant of first degree
rape upon the theory alleged in the indictment that he "did employ a deadly
weapon, to wit: a pocket knife" in the commission thereof where it tended to
show that defendant used a pocketknife (1) to threaten the victim with death,
whereby he effectively discouraged any further resistance to his demands, and
(2) to remove an article of her underclothing, whereby he expedited the execu-
tion of additional sexual assaults.

**4. Rape § 5— pocketknife as deadly weapon—sufficiency of evidence**

The trial court properly submitted to the jury an issue as to whether a
pocketknife allegedly employed by defendant in a rape was a deadly weapon
within the meaning of the first degree rape statute where there was evidence
tending to show that defendant was approximately six feet tall and weighed
over 250 pounds, defendant used the pocketknife prior to the rape to open a
can of oil, and defendant later used this same knife to cut off the victim's slip,
since the jury could find that such a knife could cause death or great bodily
harm when wielded by a man of defendant's physical stature.

**5. Rape § 6— instructions—dangerous or deadly weapon—employment or display**

The trial court's instruction that a verdict of guilty of first degree rape
would be warranted if the jury found defendant had "employed or displayed" a
dangerous or deadly weapon during an act of forcible sexual intercourse when

the indictment charged only that defendant had "employed" a deadly weapon was not prejudicial error where the trial judge, in the core of his instructions upon this point, did not mention the display of a weapon but properly emphasized that the jury would have to find that defendant had employed a knife during the rapes to convict him of the crime in the first degree, and where the State's evidence clearly supported the conclusion that defendant employed the knife by displaying it to the victim and threatening to kill her with it. Moreover, the trial court's reference to a "dangerous or deadly" weapon was not an impermissible variation from the language of the indictment which referred only to a "deadly" weapon since the terms "dangerous" and "deadly," when used to describe a weapon, are practically synonymous.

**6. Rape § 6 — first degree rape — several acts of intercourse — instructions — use of deadly weapon — unanimity of verdict as to one act**

In a trial in which the State introduced evidence tending to show the commission of several acts of forcible intercourse to support a charge of only one count of first degree rape, the trial court effectively prevented the jury from considering evidence of any sexual deed that did not entail the use of a deadly weapon on the first degree rape charge by instructing on the difference between first and second degree rape. Furthermore, the trial court was not required to give *sua sponte* an instruction that the jury had to agree unanimously as to the existence of all of the elements of first degree rape with respect to one particular act of forcible vaginal intercourse in order to return a verdict of guilty of first degree rape.

**7. Kidnapping § 1.2 — restraining victim in car by fraud — sufficiency of evidence**

The State's evidence was sufficient to support submission of a kidnapping charge to the jury upon the theory that defendant illegally restrained the victim in her car by restricting her to a car in a place or places other than where she wanted to be by fraud or trickery where it tended to show that the victim had car trouble while driving to her home in South Carolina; after defendant put oil and water in the car engine, defendant entered the car under the fraudulent pretext of seeking a ride to the home of a crippled friend; defendant directed the victim to turn off the highway onto a dirt road, whereupon he cut off the car engine, made physical advances upon her, refused her repeated requests for him to leave the vehicle and later, while still persisting in the pretense of going to the home of a crippled friend, made her drive still further along the dirt road; and defendant then grabbed the keys out of the ignition, pulled the victim from the car into a tobacco barn, and raped her.

**8. Criminal Law §§ 13, 147 — validity of indictment — motion for appropriate relief in appellate court**

Defendant's motion for appropriate relief upon the ground that the indictment was fatally defective could properly be made for the first time in the appellate division. G.S. 15A-1415(b)(2); G.S. 15A-1418.

**9. Kidnapping § 1 — indictment — absence of allegation of lack of consent**

An indictment for kidnapping was not fatally defective because it failed to allege specifically that the kidnapping was effected without the victim's consent, since the consent element of G.S. 14-39(a) is, in reality, an absolute de-

State v. Sturdivant

fense to the charge, and an indictment need not negate a defense to the stated crime. Furthermore, the indictment did not utterly fail to indicate that the kidnapping was accomplished without the victim's consent where it alleged that defendant "unlawfully and wilfully did feloniously kidnap" the victim "by unlawfully restraining her," since one cannot unlawfully kidnap or unlawfully restrain another with his consent.

ON appeal as a matter of right from the judgment of *Hobgood, J.,* entered at the 30 October 1980 Criminal Session, HOKE Superior Court, imposing a life sentence for a conviction of first degree rape. Defendant was also convicted of kidnapping, and a consecutive sentence of thirty years to life was imposed. A motion to bypass the Court of Appeals for review of the kidnapping conviction was allowed on 15 April 1981.

Defendant was charged in separate indictments, proper in form, with the first-degree rape and kidnapping of Elizabeth Sellers Harvey. Defendant entered pleas of not guilty to the charges. The jury returned verdicts of guilty on both counts. The facts, relevant to the issues raised in this appeal, are briefly summarized as follows.

The State's evidence tended to show that Elizabeth Harvey left Fayetteville, North Carolina, at approximately 8:00 p.m. on 11 July 1980, to drive to her home in Bennettsville, South Carolina. Her son was in the car with her and was asleep on the back seat. On the way home, her car started having engine trouble. The oil light was flashing, and the engine was making "knocking" noises. Mrs. Harvey left her regular route of travel to seek assistance and drove toward the town of Raeford, North Carolina. She stopped at a small grocery store with gas pumps and bought a quart of oil.

As Mrs. Harvey was leaving the store, a man came up and offered to help her. She subsequently identified this man as the defendant, Ardell Sturdivant, a very large Indian male with bushy hair. Defendant told Mrs. Harvey that he was a mechanic. With her permission, he examined the engine. He told her that the engine needed some water and that he would fill it up if she drove over to his house, which was located across the field adjacent to the store. She accepted defendant's offer and drove to his house. There, defendant filled her car radiator with water and, at Mrs. Harvey's request, also put in the oil, which she had previous-

ly purchased at the store. He opened the oil can with a knife he was carrying on his person. A woman and some children were in the house observing these events from a window. When he finished working on the car, defendant asked Mrs. Harvey if she would mind driving him "just up the road" to the home of a crippled friend. She agreed to do so, and defendant got back in the car.

Defendant subsequently directed Mrs. Harvey to turn off Highway 401 onto a small dirt road. She first inquired whether he was sure there was a trailer down there. He assured her that the trailer was on that road, and, though she was "concerned a little bit," Mrs. Harvey turned onto the dirt road in accordance with defendant's directions. As soon as she did this, he asked her to turn off the engine. She refused and asked him to get out of the car. Defendant then turned the car off himself. Mrs. Harvey asked him again to leave and to let her and her baby go. He said he would if she would let him touch her. She refused and begged him not to touch her. Defendant nonetheless persisted and felt her legs and breasts with his hands. However, he apparently became angered by Mrs. Harvey's relentless resistance to his advances so he moved back over to the passenger side of the car. He told her to start the car and take him down to the trailer. By this time, Mrs. Harvey had realized that defendant had been drinking so she asked him once more whether he was sure that the trailer was further down on this dirt road. She then drove on.

Shortly thereafter, Mrs. Harvey saw that the road was coming to an end and that there was no trailer, or any other house, in sight. There was only a tobacco barn. Mrs. Harvey suddenly accelerated the engine and turned the steering wheel sharply to the left. The car "got stuck" on the side of the road. Defendant quickly took the keys out of the ignition and put them in his pocket. He then grabbed Mrs. Harvey and told her that she was going to get out of the car and do what he wanted her to do. He pulled her out of the car, took a quilt, which was lying on the front seat, and dragged her to the tobacco barn. Mrs. Harvey's son remained on the back seat of the car asleep.

When they were inside the barn, defendant put the quilt on a bench and forced Mrs. Harvey to lie on it. He raped her. After that act, defendant ordered her to take her clothes off. As she was taking off her dress, she bent over and picked up a tobacco

stick from the floor. She hit defendant with it. He responded by beating her in the face with his fist and telling her that, because she had hurt him, he was going to kill her. He took out the knife which he had previously used to open the oil can. Mrs. Harvey grabbed his hand and entreated him not to kill her. He pushed her back over to the quilt, and while she was leaning over the bench, he took off her bra and cut off her slip from behind with the knife. Defendant then had sexual intercourse with her repeatedly though she continued to plead with him to let her go.

Eventually defendant desisted from committing further illicit sexual deeds, and, after Mrs. Harvey assured him that she would not have him arrested for these crimes, he decided to let her go. They walked back to the car. He gave her the keys and pushed the car out from the side of the road where it had stopped. They drove back to the highway, and defendant got out of the car. Mrs. Harvey drove on and stopped at a lighted trailer, which was the residence of Danny and Alec Norton. She told the Nortons what had happened and described her attacker to them. Alec Norton, who was a detective, therewith notified the Hoke County Sheriff's Department. Additional details about Mrs. Harvey's identification of defendant and his subsequent arrest, which become germane to a discussion of defendant's assignments of error, shall be included in the opinion.

Defendant did not testify, but he presented evidence in his behalf through the testimony of two relatives. In pertinent part, defendant's mother and fourteen-year-old niece testified that they saw defendant and Mrs. Harvey in the back yard of their home in the early evening hours of 11 July 1980. They both said they observed Mrs. Harvey "rubbing" defendant while he put water in her car. Defendant's mother also testified that, as far as she knew, defendant did not have a crippled friend and that she did not believe a crippled person lived in the surrounding area near their home.

The jury found defendant guilty of first degree rape and kidnapping.

*Attorney General Rufus L. Edmisten, by Special Deputy Attorney General W. A. Raney, Jr. and Associate Attorney G. Criston Windham, for the State.*

*Assistant Public Defender Malcolm R. Hunter, Jr., for the defendant.*

COPELAND, Justice.

Defendant has abandoned assignments of error 1, 2, 5, 6 and 12 by failing to advance any argument to support them in his brief. Rule 28(a), North Carolina Rules of Appellate Procedure. He does, however, properly raise seven other assignments of error for our review. After carefully considering all of defendant's contentions, we conclude that the record reveals no prejudicial error requiring a new trial and, accordingly, affirm the trial court's due entry of judgment upon his convictions.

[1] We shall address the assignments of error relating to the legality of defendant's arrest first. Defendant argues that the trial court erroneously admitted evidence of his photograph and fingerprints because these exhibits were obtained pursuant to his unlawful arrest on 15 July 1980. Simply put, defendant contends that the rape warrant issued for his arrest on 12 July 1980 did not meet the requirements of G.S. 15A-304(d). Herein, defendant makes much ado about nothing.

G.S. 15A-304(d) authorizes a judicial officer to issue an arrest warrant if he has sufficient information to make an independent determination that probable cause exists for believing a crime has been committed by the accused. Probable cause refers to the existence of a reasonable suspicion in the mind of a prudent person, considering the facts and circumstances presently known. *State v. Bright*, 301 N.C. 243, 255, 271 S.E. 2d 368, 376 (1980); *State v. Phillips*, 300 N.C. 678, 684, 268 S.E. 2d 452, 456 (1980). In the instant case, Captain J. R. Riley, of the Hoke County Sheriff's Department, submitted an affidavit to the magistrate, based upon Mrs. Harvey's statements to him, detailing the occurrence of the sexual assaults and describing the assailant. Captain Riley also testified in the affidavit that he had driven the victim around the alleged area of the incident and that she had pointed out defendant's house, the dirt road she had driven on and the tobacco barn where she had been raped. We hold that the magistrate was un-

questionably presented with sufficient information on 12 July 1980 to form a rational belief that defendant had raped Mrs. Harvey several hours earlier and that the magistrate was thereby legitimately empowered to issue a warrant for defendant's arrest under G.S. 15A-304(d), *supra*. Defendant's contentions to the contrary are frivolous. Since defendant was arrested pursuant to a warrant based upon probable cause, evidence obtained from his person, after he was *lawfully* taken into custody, was constitutionally admissible. *See State v. Allen*, 301 N.C. 489, 272 S.E. 2d 116 (1980); *State v. Accord and Moore*, 277 N.C. 65, 175 S.E. 2d 583 (1970). Assignments of error three and four are, therefore, overruled.

[2]  We shall now direct our attention to the assignments of error relative to defendant's conviction of first degree rape. Defendant maintains that there was insufficient evidence to convict him of first degree rape upon the theory alleged in the indictment that he "did employ a deadly weapon, to wit: a pocket knife" in the commission thereof. At the outset, we note that defendant was convicted of first degree rape pursuant to G.S. 14-27.2 (Cum. Supp. 1979) which became effective 1 January 1980. *See* Law of May 29, 1979, ch. 682, § 14, 1979 Sess. Laws 729. In pertinent part, G.S. 14-27.2 provides that forcible, non-consensual vaginal intercourse constitutes first degree rape if the perpetrator "employs or displays a dangerous or deadly weapon." By its terms, the new rape statute no longer requires an express showing by the State that a deadly weapon was used *in a particular manner* to make out a case of the crime in the first degree. In contrast, the prior statute, G.S. 14-21(1)(b) (Cum. Supp. 1977), obligated the State to show specifically that the weapon was used to overcome the victim's resistance or to procure her submission. *See, e.g., State v. Hunter*, 299 N.C. 29, 261 S.E. 2d 189 (1980); *State v. Brady*, 299 N.C. 547, 264 S.E. 2d 66 (1980); *State v. Thompson*, 290 N.C. 431, 226 S.E. 2d 487 (1976). The current statute, however, simply necessitates a showing that a dangerous or deadly weapon was employed or displayed in the course of a rape *period*.[1]

---

1. We perceive that the Legislature intended to make implicit in G.S. 14-27.2 a matter of ordinary common sense: that the use of a deadly weapon, in any manner, in the course of a rape offense, always has some tendency to assist, if not entirely enable, the perpetrator to accomplish his evil design upon the victim, who is usually unarmed.

[3] Here, the indictment for first degree rape referred to defendant's employment of a deadly weapon to support the charge. Defendant contends that, although the prosecutrix testified that he took the knife out of his pocket and *displayed* it to her in the tobacco barn after the completion of the first act of sexual intercourse, her testimony did not tend to show that he *employed* the knife during any of the illicit sexual deeds. The following excerpt from the victim's testimony refutes any such conclusion:

> He made me lie down on the bench and that is the first time he had sexual intercourse with me against my will. Then he pulled me up and told me to take my clothes off.

> When I unzipped my dress it fell to the ground. I felt something under my feet and I picked it up, and it was a tobacco stick, and I came up and I hit him with it. Then he hit me back in the face. He hit me with his fist. He told me now I had done it, I had hurt him and he was going to kill me. He reached in his pocket and got out his knife and I grabbed his hand, the hand I had free and begged him not to kill me. He told me I had hurt him and I asked him what did he think he had done to me. He pushed me over to the quilt and I was sort of leaning over the bench. At that time he undid my bra and the strap was broken, and then he cut my slip off of me from behind.

> I picked up the slip and I wiped my face with it and there was blood all over it. He had intercourse with me repeatedly and I continued begging him to let me go.

The plain meaning of the word "employ" is "to use in some process or effort" or "to make use of." The American Heritage Dictionary of the English Language 428 (1969); Webster's Third New International Dictionary 743 (1964). Viewing the foregoing statements of the victim in the light most favorable to the State, with the benefit of every reasonable inference arising therefrom, we hold that there was an adequate evidentiary basis for the jury to conclude that defendant had employed a deadly weapon by using the pocketknife in at least two ways: (1) to threaten the victim with death, whereby he effectively discouraged any further resistance to his demands, and (2) to remove an article of her underclothing, whereby he expedited the execution of additional

State v. Sturdivant

sexual assaults. Such evidence clearly satisfied the requirements of G.S. 14-27.2(a)(1)(a). *See* note 1, *supra.*

[4] Defendant also argues, however, that the State did not demonstrate that his pocketknife was a deadly weapon. A deadly weapon is generally defined as any article, instrument or substance which is likely to produce death or great bodily harm. *See State v. Cauley,* 244 N.C. 701, 94 S.E. 2d 915 (1956); *State v. Perry,* 266 N.C. 530, 39 S.E. 2d 460 (1946).[2] *Accord,* Black's Law Dictionary 359 (5th ed. 1979); 79 Am. Jur. 2d *Weapons and Firearms* § 1 (1975); 1 A.L.I. Model Penal Code and Commentaries § 210.0(4) (1980). The definition of a deadly weapon clearly encompasses a wide variety of knives. For instance, a hunting knife, a kitchen knife and a steak knife have been denominated deadly weapons *per se. State v. Brady,* 299 N.C. 547, 264 S.E. 2d 66 (1980); *State v. Lednum,* 51 N.C. App. 387, 276 S.E. 2d 920 (1981); *State v. Parker,* 7 N.C. App. 191, 171 S.E. 2d 665 (1970). A pocketknife is also unquestionably capable of causing serious bodily injury or death. *See generally* 79 Am. Jur. 2d *Weapons and Firearms* § 2 (1975); Annot., 100 A.L.R. 3d 287 (1980); *see also* note 2, *supra.* In *State v. Collins,* the Court opined that a pocketknife, having a blade two and a half inches long, was a deadly weapon as a matter of law. 30 N.C. 407, 409, 412 (1848). *Accord, State v. Roper,* 39 N.C. App. 256, 257, 249 S.E. 2d 870, 871 (1978) ("keen bladed pocketknife"). Nevertheless, the evidence in each case determines whether a certain kind of knife is properly characterized as a lethal device as a matter of law or whether its nature and manner of use merely raises a factual issue about its potential for producing death. *See State v. Watkins,* 200 N.C. 692, 158 S.E. 393 (1931); *State v. West,* 51 N.C. 505 (1859).

In the instant case, the trial court submitted the issue concerning the "deadly" character of defendant's pocketknife to the

---

2. No item, no matter how small or commonplace, can be safely disregarded for its capacity to cause serious bodily injury or death when it is wielded with the requisite evil intent and force. *See, e.g., State v. Joyner,* 295 N.C. 55, 243 S.E. 2d 367 (1978) (Pepsi-Cola bottle); *State v. Strickland,* 290 N.C. 169, 225 S.E. 2d 531 (1976) (plastic bag); *State v. Perry,* 226 N.C. 530, 39 S.E. 2d 460 (1946) (brick); *State v. Heffner,* 199 N.C. 778, 155 S.E. 879 (1930) (blackjack); *State v. Smith,* 187 N.C. 469, 121 S.E. 737 (1924) (baseball bat); *State v. Beal,* 170 N.C. 764, 87 S.E. 416 (1915) (rock); *State v. Craton,* 28 N.C. 164 (1845) (pine stub); *State v. Whitaker,* 29 N.C. App. 602, 225 S.E. 2d 129 (1976) (broom handle, nail clippers).

jury. Defendant contends that the evidence was insufficient for the court to do so since the knife itself was not offered into evidence, and the victim failed to describe the length of the knife's blade. We disagree. The absence of such evidence was indeed a factor to be considered by the jury in its evaluation of the overall weight and worth of the State's case on this point. The omission was not, however, fatal as the State presented other evidence which permitted a rational trier of fact to conclude that the pocketknife was a deadly weapon. The victim's uncontroverted testimony revealed that, prior to the kidnapping and rape, defendant had used the pocketknife to open a can of oil. He later used this same knife to cut off the victim's slip. Defendant was a large man, approximately six feet tall and over 250 pounds. We believe that a knife sturdy enough to open a metal oil can and sharp enough to slash a piece of clothing could surely cause death or great bodily harm when wielded by a man of defendant's physical stature. The assignment of error is overruled.

[5]  Defendant argues that the trial court's instructions improperly permitted the jury to convict him of first degree rape upon a theory not legally charged in the indictment. Specifically, defendant took exception to the judge's direction that a verdict of guilty of first degree rape would be warranted if, among other things, the jury found that defendant had "employed or displayed a dangerous or deadly weapon" during an act of forcible sexual intercourse. Defendant contends that this instruction misled the jury into believing that he could be convicted upon his *display* of a *dangerous* weapon, a theory different from, and one requiring less proof than, the formal allegation of his *employment* of a *deadly* weapon in the indictment.

It is a cardinal rule of appellate review that the trial court's instructions must be examined contextually as a whole. *State v. Alston*, 294 N.C. 577, 243 S.E. 2d 354 (1978); *State v. Cook*, 263 N.C. 730, 140 S.E. 2d 305 (1965). "[T]he utterance of the judge is to be considered in the light of the circumstances under which it was made." *State v. Carter*, 233 N.C. 581, 583, 65 S.E. 2d 9, 11 (1951). Thus, minor technical errors in an isolated portion of the charge, which could not have affected the outcome of the trial, will not be held prejudicial if the charge as a whole is correct. *State v. Cummings*, 301 N.C. 374, 271 S.E. 2d 277 (1980); *State v. Cousin*, 292 N.C. 461, 233 S.E. 2d 554 (1977).

Here, the judge twice quoted the precise language of the applicable statute, G.S. 14-27.2(a)(1)(a), when he should have used the more limited wording of the indictment. After inaccurately referring to both the employment and display of a dangerous or deadly weapon, the judge additionally instructed the jury as follows:

> A dangerous or deadly weapon is a weapon which is likely to cause death or serious bodily injury. In determining whether a knife is a deadly weapon you should consider the nature of the knife, the manner in which it was used and the size and strength of Ardell Sturdivant as compared to Elizabeth Harvey. So, I charge that if you find from the evidence beyond a reasonable doubt that on or about July the 11th, 1980, Ardell Sturdivant engaged in vaginal intercourse with Elizabeth Harvey . . . and that Elizabeth Harvey did not consent and that it was against her will and that Ardell Sturdivant employed a knife and that this was a dangerous or deadly weapon, it would be your duty to return a verdict of guilty of first degree rape.

First, we note that in the core of his instructions upon this point, *supra*, the judge did not mention the display of a weapon but properly emphasized that the jury would have to find, beyond a reasonable doubt, that defendant had *employed* the knife during the rapes to convict him of the crime in the first degree. In any event, we fail to see how the reference to both an employment and a display of a weapon could have been particularly detrimental to defendant since the State's evidence clearly supported the conclusion that he had employed the knife by displaying it to the victim and threatening to kill her with it. Second, we hold that the reference to a "dangerous or deadly" weapon was not an impermissible variation from the language of the indictment. The terms "dangerous" and "deadly," when used to describe a weapon, are practically synonymous. Black's Law Dictionary 355, 359 (5th ed. 1979). Moreover, any possible illusion, as suggested by defendant, that a dangerous weapon is somehow less harmful than, and different from, a deadly one was plainly dispelled when the judge stated: "A dangerous or deadly weapon is a weapon which is likely to cause death or serious bodily injury." This is the well-accepted definition of a *deadly* weapon in this State. *See State v. Cauley, supra,* 244 N.C. 701, 94 S.E. 2d 915 (1956); *State v. Perry, supra,* 226 N.C. 530, 39 S.E. 2d 460 (1946). In these cir-

cumstances, the mistakes in the charge cannot be deemed so substantial as to create a reasonable probability that the trial result would have otherwise been in defendant's favor; hence, the errors do not warrant a new trial. In sum, the variance between the instructions and the theory alleged in the indictment was not significant or material, and defendant was not wrongfully convicted upon "some abstract theory not supported by the bill of indictment." *See State v. Taylor,* 301 N.C. 164, 170, 270 S.E. 2d 409, 413 (1980); *State v. Dammons,* 293 N.C. 263, 272, 237 S.E. 2d 834, 840 (1977).

[6]   Defendant brings forward yet another assignment of error concerning the trial court's instructions on first degree rape. As defendant sees it, a unique problem arose because the State introduced evidence tending to show the commission of several acts of forcible intercourse to support a charge of only one count of first degree rape. His contentions are two-fold: (1) the court erred in not instructing the jury, on its own motion, that it could not consider any evidence of the first act of intercourse in determining his guilt of first degree rape since the victim did not testify that a weapon had been employed during that intitial rape, and (2) the court erred in not instructing the jury that they had to agree unanimously as to the existence of all of the elements of first degree rape with respect to one particular act of forcible vaginal intercourse. We hold that the judge adequately and fairly explained the law arising on the evidence, G.S. 15A-1232, and defendant was not entitled, on this record, to more specific or separate instructions absent a request therefor.

First, we find that, in substance, the trial court gave one of the admonitions which defendant argues were erroneously omitted. The trial judge directed the jury to return a verdict of guilty of first degree rape only if they found beyond a reasonable doubt that defendant had performed an act of forcible, non-consensual vaginal intercourse with the victim and had employed a deadly weapon in its commission. The judge further instructed the jury:

[I]f you do not so find or have a reasonable doubt as to one or more of these things, you would not return a verdict of guilty of first degree rape. If you do not find the defendant guilty of first degree rape, you must determine whether he is guilty of second degree rape.

Second degree rape differs from first degree rape only that it is not necessary for the State to prove beyond a reasonable doubt that the defendant employed or displayed a dangerous or deadly weapon.

By instructing on the difference between first and second degree rape, the judge effectively prevented the jury from considering evidence of any sexual deed that did not entail the use of a deadly weapon on the first degree rape charge.

Second, we find no authority in this State for the proposition that a trial judge must give *sua sponte* an instruction regarding unanimity of the verdict as to a specific criminal act. Indeed, it is well settled law in this jurisdiction that, in the absence of a request, a judge is not even required to charge the jury in general about the need for an unanimous verdict since the defendant always has the right to have the jury polled. *State v. Ingland,* 278 N.C. 42, 47, 178 S.E. 2d 577, 580 (1971); *State v. Hinton,* 14 N.C. App. 564, 567, 188 S.E. 2d 698, 700, *cert. denied,* 281 N.C. 626, 190 S.E. 2d 469 (1972). Moreover, we are not persuaded that the jury was misled or confused concerning the need for unanimity before they could properly convict this defendant of first degree rape. The judge fully and correctly explained the elements of the crime to the jury. In addition, though he was not required to do so, the judge did instruct the jury "that a verdict is not a verdict until all twelve jurors unanimously agree as to what your decision shall be." Such instructions were patently sufficient to apprise the jury that it must agree on the existence of all of the elements of the greater offense in at least one of the sexual assaults described by the victim. Finally, we note that the verdict returned against defendant specifically stated: "We, the jury, *unanimously* find the defendant, Ardell Sturdivant, Guilty of 1st Degree Rape." (Emphasis added). If defendant had any doubt as to the jury's unanimity, he should have exercised his right to have the jury polled. *State v. Ingland, supra.*

[7] We shall finally consider defendant's remaining contentions concerning the validity of his kidnapping conviction. Defendant first contends that the trial court erred in denying his motion to dismiss the kidnapping charge. We disagree. It is well established that a criminal charge against a defendant is not subject to dismissal unless the State fails to present substantial evidence of

his guilt on every essential element of the particular offense. *State v. Cox*, 303 N.C. 75, 277 S.E. 2d 376 (1981); *State v. Fletcher*, 301 N.C. 870, 272 S.E. 2d 859 (1981). Under G.S. 14-39(a), the essence of any kidnapping offense is the unlawful confinement, restraint or removal of a human being for a certain proscribed purpose. Here, the indictment charged defendant with a violation of G.S. 14-39 upon a single theory: that he kidnapped the victim "by unlawfully restraining her" to facilitate his subsequent commission of first degree rape. The trial court further delimited the permissible basis for a kidnapping conviction by instructing the jury that they must find beyond a reasonable doubt "[t]hat the defendant unlawfully restrained Elizabeth Harvey, that is, restricted Elizabeth Harvey's freedom of movement by restricting her to an automobile in a place or places other than where she wanted to be." Specifically, defendant argues that there was no evidence whatsoever in the record to support submission of the kidnapping charge to the jury upon the hypothesis that he illegally restrained the victim *in her car*. We believe that the State met its burden of presenting substantial evidence of defendant's guilt of the crime upon this theory.

Viewed in the light most favorable to the State, the evidence permitted a rational trier of fact to find that defendant commenced an effective restraint of the victim in her automobile by re-entering it, after he had put oil and water in the engine, under the fraudulent pretext of seeking a ride to the home of a crippled friend. This constraint of the victim continued as defendant directed her to turn off the highway onto a dirt road, whereupon he cut off the car engine, made physical advances upon her, refused her repeated requests for him to leave the vehicle and later, while persisting in the pretense of going to the home of a crippled friend, made her drive still further along that deserted road. Restraint of the victim in her automobile did not end until defendant grabbed the keys out of the ignition and pulled her from the car to take her into the tobacco barn.

The State's evidence also permitted the jury to find that defendant's unlawful restraint caused the victim to remain in her car "in a place or places other than where she wanted to be." The victim was driving to her home in South Carolina with her son on a Friday evening. Although engine trouble caused her to make a detour in the direction of Raeford, North Carolina, clearly it was

not her intent to linger in that area after the completion of the required repairs. Nonetheless, when the car was again ready for travel, she agreed to delay her journey for a while longer in order to give defendant a ride to another nearby residence. In light of these circumstances, it is obvious that defendant's chicanery directly induced the victim to remain in her car in a rural, deserted location in this state when she actually wished to be in another place — her home in South Carolina.

A kidnapping can be just as effectively accomplished by fraudulent means as by the use of force, threats or intimidation. *State v. Alston,* 294 N.C. 577, 589, 243 S.E. 2d 354, 362 (1978); *State v. Ingland,* 278 N.C. 42, 47-48, 178 S.E. 2d 577, 581-82 (1971); *see generally* 1 Am. Jur. 2d *Abduction and Kidnapping* §§ 13, 15 (1962); Annot., *Kidnapping by Fraud or False Pretenses,* 95 A.L.R. 2d 450 (1964). The unfortunate victim in the case at bar can, no doubt, attest to this fact.[3] More particularly, in *State v. Fulcher,* our Court noted that the offense of kidnapping, as it is defined in G.S. 14-39, includes an unlawful restraint whereby one person's freedom of movement is restricted due to another's fraud or trickery. 294 N.C. 503, 523, 243 S.E. 2d 338, 351 (1978). This is the precise manner in which the kidnapping was committed here, and we hold that defendant's unlawful restraint of the victim inside her car was a separate, complete act, independent of and apart from his subsequent rape of her in the tobacco barn. *See State v. Silhan,* 297 N.C. 660, 256 S.E. 2d 702 (1979); *State v. Fulcher, supra.*

[8]  Ten days after oral arguments were concluded in this Court, defendant filed a motion in arrest of judgment and for appropriate relief upon the ground that the kidnapping indictment was fatally defective. Several statutes in our criminal procedure law convince us that this motion is properly before the Court.

---

3. Indeed, the case reports of this Court are replete with illustrations of kidnapping executed by deception. *See, e.g., State v. Wilson,* 296 N.C. 298, 250 S.E. 2d 621 (1979) (nine-year-old girl fraudulently enticed to enter a vehicle); *State v. Hudson,* 281 N.C. 100, 187 S.E. 2d 756 (1976), *cert. denied,* 414 U.S. 1160, 94 S.Ct. 920, 39 L.Ed. 2d 112 (1974) (retarded girl admitted defendant into her home after he falsely told her he needed to use the telephone); *State v. Murphy,* 280 N.C. 1, 184 S.E. 2d 845 (1971) (young boy followed a man into the woods on the pretense of looking for squirrels); *State v. Gough,* 257 N.C. 348, 126 S.E. 2d 118 (1962) (man falsely represented to a young girl that he wanted her to baby-sit for his two children).

G.S. 15A-1415(b)(2) provides that a motion for appropriate relief, which is based upon the trial court's lack of subject matter jurisdiction, may be asserted by a defendant "any time" after verdict. It is elementary that a valid bill of indictment is essential to the jurisdiction of the trial court to try an accused for a felony. N.C. Const. Art. I, § 22; *State v. Simpson,* 302 N.C. 613, 276 S.E. 2d 361 (1981); *State v. Crabtree,* 286 N.C. 541, 212 S.E. 2d 103 (1975). Thus, defendant's motion, attacking the sufficiency of an indictment, falls squarely within the proviso of G.S. 15A-1415(b)(2), *supra,* and as such may be made for the first time in the appellate division. G.S. 15A-1418. Moreover, the failure of a criminal pleading to charge the essential elements of the stated offense is an error of law which may be corrected upon appellate review even though no corresponding objection, exception or motion was made in the trial division. G.S. 15A-1441, -1442(2)(b), -1446(d)(1) and (4). Consequently, we shall proceed to address defendant's motion upon its merits.

**[9]** In his motion, defendant argues that the indictment was fatally defective under G.S. 14-39(a) because it failed to allege specifically that the kidnapping was effected *without the victim's consent.* To sustain his position, defendant relies exclusively upon a recent decision of the Court of Appeals, *State v. Froneberger,* 53 N.C. App. 471, 281 S.E. 2d 71 (1981). In *Froneberger,* the Court of Appeals examined the sufficiency of the following kidnapping indictment:

> THE JURORS FOR THE STATE UPON THEIR OATH PRESENT that on or about the 13 day of July, 1979, in Mecklenburg County, Ronald Tyree Fronberger, did unlawfully, wilfully and feloniously confine, restrain, and remove another person, Ethell Wilson, for the purpose of facilitating the commission of the felony of murder in teh [sic] first degree, adn [sic] said Ethell Wilson was killed as a result of said kidnapping, in violation of G.S. 14-39.

The Court of Appeals concluded that the slight misspelling of defendant's name (absence of "e" as fifth letter) and the absence of an allegation as to the age of the victim did not render the indictment defective. The Court further held, however, that the failure to allege the element of lack of consent in the indictment did constitute fatal error. First, we note that identical indict-

ments were returned against Froneberger's "partners" in the charged kidnapping, and that their convictions have been upheld on appeal. *State v. Norwood,* 303 N.C. 473, 279 S.E. 2d 550 (1981); *State v. Easter,* 51 N.C. App. 190, 275 S.E. 2d 861, *appeal dismissed,* 303 N.C. 183 (1981). Second, we further find that the language of the kidnapping indictment in the instant case is not exactly the same as that used in *Froneberger.* In any event, it suffices to say that we are neither persuaded nor bound by the reasoning of the Court of Appeals,[4] and we decline to hold here that the indictment was insufficient to vest the trial court with jurisdiction to try defendant for kidnapping.

Adequate notice of the nature of a criminal accusation is a necessary corollary to the jurisdictional requirement of an indictment in capital cases. N.C. Const. Art. I, §§ 22-23. This constitutional mandate, however, merely affords a defendant the right to be charged by a lucid prosecutive statement which factually particularizes the essential elements of the specified offense. *See* G.S. 15A-924(a)(5); *State v. Perry,* 291 N.C. 586, 231 S.E. 2d 262 (1977); *State v. King,* 285 N.C. 305, 204 S.E. 2d 667 (1974). In pertinent part, G.S. 14-39(a) defines the crime of kidnapping as follows: "Any person who shall unlawfully confine, restrain, or remove from one place to another, any person 16 years of age or over without the consent of such person . . . shall be guilty of kidnapping. . . ." We believe that this statutory definition of kidnapping focuses on the unlawful confinement, restraint or removal of a human being and that the omission of an *explicit* reference to the victim's lack of consent thereto does not constitute a failure to include an essential element of the offense in the indictment.[5]

This case is clearly governed by the exception set out in *State v. Bryant,* 111 N.C. 693, 694, 16 S.E. 326 (1892):

---

4. The State petitioned the Court for discretionary review of *Froneberger, supra,* on 21 September (1981). This matter is still pending.

5. Prior to 1 July 1975, G.S. 14-39 simply provided that "It shall be unlawful . . . to kidnap or cause to be kidnapped any human being, or to demand a ransom . . . to be paid on account of kidnapping. . . ." Since the elements of the crime were not statutorily delineated, our courts applied the common law definition of kidnapping. Thus, under the former statute, the unlawful taking and carrying away of a person by force against his will constituted kidnapping in this State. *See State v. Ingland,* 278 N.C. 42, 178 S.E. 2d 577 (1971); *State v. Lowry,* 263 N.C. 536, 139 S.E. 2d 870, *appeal dismissed,* 382 U.S. 22, 86 S.Ct. 227, 15 L.Ed. 2d 16 (1965).

> Though the general rule is, that a proviso contained in the same section of the law . . . in which the defence is defined, must be negatived, yet where the charge itself is of such a nature that the formal statement of it is equivalent in meaning to such negative averment, there is no reason for adhering to the rule, and such a case constitutes an exception to it.

*See State v. Epps*, 213 N.C. 709, 197 S.E. 580 (1938). By its very nature, the crime of kidnapping cannot be committed if one consents to the act in a legally valid manner. *See* 1 Am. Jur. 2d *Abduction and Kidnapping* § 15 (1962); Bouvier's Law Dictionary 1806 (Rawle rev. 1914). The consent element of G.S. 14-39(a) is, therefore, in reality, an absolute defense to the charge. It was established long ago that an indictment need not negate a defense to the stated crime; rather, it is left to the defendant to show his defenses at trial. *State v. Norman*, 13 N.C. 222 (1828).

More importantly, we are not convinced that defendant's indictment utterly failed to indicate that the kidnapping was accomplished without the victim's consent. The indictment stated:

> THE JURORS FOR THE STATE UPON THEIR OATH PRESENT that on or about the 11 day of July, 1980, in Hoke County Ardell Sturdivant *unlawfully and wilfully did feloniously kidnap* Elizabeth Sellers Harvey, a person who had attained the age of sixteen (16) years, *by unlawfully restraining her* for the purpose of facilitating the commission of a felony, to wit: rape, in violation of North Carolina General Statutes Section 14-39. (Emphases added.)

The term "kidnap," by itself, continues to have a precise and definite legal meaning under G.S. 14-39(a), to wit, the unlawful seizure of a person against his will. Black's Law Dictionary 781 (5th ed. 1979). *See State v. Norwood*, 289 N.C. 424, 222 S.E. 2d 253 (1976); *State v. Penley*, 277 N.C. 704, 178 S.E. 2d 490 (1971); *see also State v. George*, 93 N.C. 567 (1885). In short, common sense dictates that one cannot unlawfully kidnap or unlawfully restrain another with his consent. This being so, we hold that the indictment adequately alleged the essential elements of kidnapping.

In conclusion, we note that the "true and safe rule" for prosecutors in drawing indictments is to follow strictly the precise

wording of the statute because a departure therefrom unnecessarily raises doubt as to the sufficiency of the allegations to vest the trial court with jurisdiction to try the offense.[6] *State v. Carpenter*, 173 N.C. 767, 92 S.E. 373 (1917); *State v. Bryant, supra; State v. George, supra.* Nevertheless, it is not the function of an indictment to bind the hands of the State with technical rules of pleading; rather, its purposes are to identify clearly the crime being charged, thereby putting the accused on reasonable notice to defend against it and prepare for trial, and to protect the accused from being jeopardized by the State more than once for the same crime. *See State v. Gregory*, 223 N.C. 415, 27 S.E. 2d 140 (1943). Thus, G.S. 15-153 provides that an indictment shall not be quashed "by reason of any informality or refinement" if it accurately expresses the criminal charge in "plain, intelligible, and explicit" language sufficient to permit the court to render judgment upon conviction. We hold that the instant indictment reasonably notified defendant of the crime for which he was being charged by plainly describing *who did what and when* and by indicating which statute was violated by such conduct. In such circumstances, it would not favor justice to allow defendant to escape merited punishment upon a minor matter of form. *See State v. Parker*, 81 N.C. 531, 532 (1879); *State v. Colbert*, 75 N.C. 368, 373-74 (1876). Defendant's motion for appropriate relief is accordingly denied.

In defendant's trial, we find no error.

No error.

---

6. A brief and informal survey of the records of twenty-five kidnapping cases appealed to this Court since the enactment of the new kidnapping statute disclosed four other cases where the indictment failed to negate the element of consent. *State v. Norwood*, 303 N.C. 473, 279 S.E. 2d 550 (1981); *State v. Taylor*, 301 N.C. 164, 270 S.E. 2d 409 (1980); *State v. Alston*, 294 N.C. 577, 243 S.E. 2d 354 (1978); *State v. Dammons*, 293 N.C. 263, 237 S.E. 2d 834 (1977). These cases originated in Cumberland, Guilford and Mecklenburg counties.