**STATE v. CAUDLE**

[172 N.C. App. 261 (2005)]

━━━━━━━━

STATE OF NORTH CAROLINA v. TONEY CAUDLE

No. COA03-1576

(Filed 2 August 2005)

**1. Assault— knife—deadly weapon per se**

There was no plain error in an assault prosecution where the court instructed the jury that the kitchen knife used by defendant was a deadly weapon per se. The definition of a deadly weapon

clearly encompasses a wide variety of knives, and the actual effects produced by the weapon may be considered in determining whether it is deadly.

**2. Assault— knife—length of blade—inaccurate statement of blade length**

There was no plain error in an assault prosecution where the court described the defendant's knife as having a six-inch blade even though there was no evidence to that effect (there was testimony that the blade was about four inches long). However, the deadly nature of the knife was not in issue and the mischaracterization of the blade length was not so fundamental an error as to amount to a miscarriage of justice or change the jury verdict.

**3. Assault— description of wounds as serious injury—not plain error**

The trial court's descriptions of an assault victim's stab wounds as a serious injury did not amount to plain error where the victim suffered injuries to her cheek, lip, head, neck, and hands, required thirty to forty stitches, and was hospitalized for two days.

**4. Assault— with a deadly weapon inflicting serious injury— refusal to charge on lesser offense—evidence of deadly weapon**

There was no plain error in the trial court's refusal to instruct on the lesser included offense of assault inflicting serious injury in a prosecution for assault with a deadly weapon inflicting serious injury.

**5. Sentencing— aggravating factors—*Blakely* error—jury finding required**

Any fact that increases the penalty beyond the presumptive range (other than the fact of a prior conviction) must be submitted to the jury and proven beyond a reasonable doubt. An assault defendant received a new sentencing hearing because the court itself found the aggravating factor that defendant had committed the offense while on pretrial release.

**6. Sentencing— aggravating factors—allegation not required**

Aggravating factors need not be alleged in the indictment.

Appeal by defendant from judgment entered 10 July 2003 by Judge W. Russell Duke, Jr., in Halifax County Superior Court. Heard in the Court of Appeals 11 October 2004.[1]

*Attorney General Roy Cooper, by Assistant Attorney General Jane Ammons Gilchrist, for the State.*

*Kevin P. Bradley for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Toney Caudle ("defendant") appeals his conviction for assault with a deadly weapon inflicting serious injury. For the reasons discussed herein, we hold that defendant received a trial free of prejudicial error, but we remand the case for resentencing.

The State's evidence presented at trial tends to show the following: Defendant and Martha Hendricks ("Hendricks") were "[c]lose friends" who had become "intimate" in December 2002 or January 2003. On the night of 9 February 2003, defendant and Hendricks were at a residence occupied by defendant's sister, Mary Jane Caudle ("Mary Jane"). Defendant's cousin, Ronnie Caudle ("Ronnie"), and Mary Jane's boyfriend, Boot Hunter ("Boot"), were also at the residence. According to Hendricks, everyone but defendant was drinking alcohol, and Mary Jane, Ronnie, and Boot were "probably" using crack cocaine. There was no electricity or telephone service at the residence, and the occupants had lit candles in the living room for light.

At some point during the evening, defendant and Hendricks went to the bedroom. According to Hendricks, while she and defendant were in the bedroom, defendant "flipped" and accused Hendricks of "watching" Ronnie. Hendricks denied "watching" Ronnie, but defendant nevertheless "started grabbing and slapping and stabbing [Hendricks] at the same time." Defendant slapped Hendricks one time and stabbed her eleven times with a short-handled kitchen knife. Hendricks recognized the knife as a steel-bladed knife that defendant used to "cut[] his rocks."

Shortly after the altercation began, Hendricks screamed for help. However, "[b]ecause it didn't look like [defendant] was going to stop stabbing" her, Hendricks "had to pretend [that she] was dead."

---

1. By order of this Court, the filing of this opinion was delayed pending our Supreme Court's decision in *State v. Allen,* 359 N.C. 425, —— S.E.2d —— (Filed 1 July 2005) (No. 485PA04).

Hendricks "started getting weak" from losing "a lot of blood[,]" so she "just fell to the floor and held [her] breath like [she] was dead." Shortly thereafter, defendant helped put Hendricks in a vehicle and drove her to Halifax Regional Medical Center ("Halifax Regional"). Hendricks lost consciousness on the way to Halifax Regional, but she remembered defendant telling her that "he would see [her] dead before he'd see [her] with anybody else."

During the incident, Mary Jane heard Hendricks "call twice" from the bedroom. When she entered the room, Mary Jane "saw [defendant] standing over top of [Hendricks]." Mary Jane then "saw [defendant's] hand go up like that [indicating], and then it came back down." Mary Jane "saw the blood" but "didn't see no weapon or no nothing." Although there were no candles in the bedroom, "it was light enough" for Mary Jane to see clearly, and she noted "a bottle [that] had been broken on the bed" next to Hendricks.

Hendricks was admitted to Halifax Regional via the emergency room. During her emergency room treatment, Hendricks told police officers that she was assaulted by defendant. Dr. Mark A. Bernat ("Dr. Bernat") treated Hendricks and noted that she had cuts on her cheek, lip, head, neck, shoulder, and hands. Hendricks' wounds required approximately thirty to forty stitches. Dr. Bernat noted on his medical report that Hendricks' heart rate was fast and her blood count was low. After he inquired about her low blood count, Hendricks told Dr. Bernat that she was anemic.

On 31 March 2003, defendant was indicted for assault with a deadly weapon inflicting serious injury. Following presentation of the evidence, the trial court denied defendant's motion to submit to the jury the offense of simple assault. On 10 July 2003, the jury returned a verdict of guilty on the assault with a deadly weapon inflicting serious injury charge. The trial court subsequently found as an aggravating factor that defendant committed the offense while on pretrial release of another charge. The trial court also found defendant to be a prior record level IV offender. Accordingly, the trial court sentenced defendant to fifty-eight to seventy-nine months imprisonment, a term within the aggravated range of N.C. Gen. Stat. § 15A-1340.17. Defendant appeals.

_____

We note initially that defendant's brief contains arguments supporting only five of the seven original assignments of error. Pursuant to N.C.R. App. P. 28(b)(6) (2005), the two omitted assignments

of error are deemed abandoned. Therefore, we limit our present review to those assignments of error properly preserved by defendant for appeal.

The issues on appeal are: (I) whether the trial court erred in instructing the jury; (II) whether the trial court erred by refusing to submit the lesser-included offense of assault inflicting serious injury to the jury; and (III) whether the trial court erred by sentencing defendant in the aggravated range.

**[1]** Defendant first argues that the trial court erred in instructing the jury. Defendant asserts that the trial court committed plain error by instructing the jury that the knife allegedly used to commit the assault was a deadly weapon. We disagree.

Our courts apply the plain error rule cautiously and only in exceptional cases. *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983). "A prerequisite to [an appellate court's] engaging in a 'plain error' analysis is the determination that the instruction complained of constitutes 'error' at all." *State v. Torain*, 316 N.C. 111, 116, 340 S.E.2d 465, 468, *cert. denied*, 479 U.S. 836, 93 L. Ed. 2d 77 (1986). "To reach the level of 'plain error' . . . the error in the trial court's jury instructions must be 'so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached.' " *State v. Collins*, 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993) (quoting *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988)).

In the instant case, the trial court gave the following pertinent jury instruction:

> The defendant has been charged with assault with a deadly weapon inflicting serious injury. For you to find the defendant guilty of this offense, the State must prove three things beyond a reasonable doubt.
>
> . . . .
>
> Second, that the defendant used a deadly weapon. A deadly weapon is a weapon that is likely to cause death or serious bodily injury. A knife with a six-inch blade is a deadly weapon.

Defendant contends that by instructing the jury that "[a] knife with a six-inch blade is a deadly weapon[,]" the trial court "effectively took the deadly weapon element of assault with a deadly weapon

inflicting serious injury away from the jury." However, in *Torain*, our Supreme Court recognized that

> It has long been the law of this state that "[w]here the alleged deadly weapon and the manner of its use are of such character as to admit of but one conclusion, the question as to whether or not it is deadly . . . *is one of law, and the Court must take the responsibility of so declaring.*"

316 N.C. at 119, 340 S.E.2d at 470 (quoting *State v. Smith*, 187 N.C. 469, 470, 121 S.E. 737, 737 (1924)) (alterations and emphasis in original). After reviewing the record in the instant case, we conclude that the evidence presented at trial leads to only one conclusion: that the knife used by defendant was a deadly weapon.

A deadly weapon "is generally defined as any article, instrument or substance which is likely to produce death or great bodily harm." *State v. Sturdivant*, 304 N.C. 293, 301, 283 S.E.2d 719, 725 (1981). "The definition of a deadly weapon clearly encompasses a wide variety of knives. For instance, a hunting knife, a kitchen knife and a steak knife have been denominated deadly weapons *per se.*" *Id.* (citing *State v. Brady*, 299 N.C. 547, 264 S.E.2d 66 (1980); *State v. Lednum*, 51 N.C. App. 387, 276 S.E.2d 920 (1981); *State v. Parker*, 7 N.C. App. 191, 171 S.E.2d 665 (1970)). "[T]he evidence in each case determines whether a certain kind of knife is properly characterized as a lethal device as a matter of law or whether its nature and manner of use merely raises a factual issue about its potential for producing death." *Sturdivant*, 304 N.C. at 301, 283 S.E.2d at 726. "Only 'where the instrument, according to the manner of its use or the part of the body at which the blow is aimed, may or may not be likely to produce such results, its allegedly deadly character is one of fact to be determined by the jury.' " *Torain*, 316 N.C. at 120, 340 S.E.2d at 470 (quoting *State v. Joyner*, 295 N.C. 55, 64-65, 243 S.E.2d 367, 373 (1978)). "The actual effects produced by the weapon may [] be considered in determining whether it is deadly." *State v. Roper*, 39 N.C. App. 256, 258, 249 S.E.2d 870, 871 (1978).

In the instant case, the evidence tends to show that Hendricks was stabbed eleven times and her wounds required approximately thirty to forty stitches. Dr. Bernat testified that when Hendricks was admitted to the hospital, he "noticed [Hendricks] had blood on her head and arms" and that "[t]here was some concern over how much blood she might have lost[.]" Dr. Bernat testified that Hendricks had suffered multiple wounds to her face, shoulder, head, neck, and

hands. Mary Jane testified that she saw defendant's hand go up and down while defendant was "standing up over [Hendricks]," and although she admitted to seeing a broken bottle on the bed beside Hendricks, she maintained that Hendricks had been "stabbed" because of the blood she saw. Hendricks testified that she was hospitalized for two days because of her low blood pressure, and she further testified that she recognized the knife defendant used to stab her as the one he used to "cut[] his rocks." We conclude that this evidence amply supports the trial court's instruction that the knife was a deadly weapon *per se*. Therefore, we hold that the trial court did not err in its instruction regarding the deadly character of the knife.

**[2]** Defendant also contends that the trial court committed plain error in its jury instructions by stating that the knife was a "knife with a six-inch blade" and that "[s]tab wounds around the head, neck, and the hand requiring 32 stitches would be a serious injury." Defendant asserts that the trial court's statements constitute an impermissible expression of opinion. We disagree.

N.C. Gen. Stat. § 15A-1222 (2003) provides that the trial court "may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury." Similarly, N.C. Gen. Stat. § 15A-1232 (2003) provides that in instructing the jury, the trial court "shall not express an opinion as to whether or not a fact has been proved and shall not be required to state, summarize or recapitulate the evidence, or to explain the application of the law to the evidence."

In the instant case, the trial court stated that the knife used by defendant was six inches long. Defendant asserts that this was plain error "because there was no evidence of use of a knife with a six-inch blade[,]" and therefore the trial court's statement "amounted to an expression of opinion that the victim's demonstration was of a knife with a six-inch blade." With respect to the knife's length, the transcript reveals that on cross-examination, Hendricks responded in the affirmative when defendant's counsel asked if the knife blade was about "four inches." The record does not contain any testimony or evidence tending to show that the knife had a six-inch blade. However, as discussed above, the deadly character of the knife was not an issue of fact to be determined by the jury. The trial court did not err by instructing the jury that the knife was a deadly weapon and leaving to the jury the determination of whether the deadly weapon was used by defendant. Therefore, we are not convinced that the trial court's mischaracterization of the knife's length was an error "so fun-

damental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." *Bagley*, 321 N.C. at 213, 362 S.E.2d at 251.

[3] Similarly, after reviewing the evidence introduced at trial regarding Hendricks' stab wounds, we are unconvinced that the trial court's statement regarding the nature of the wounds amounted to plain error. Our Supreme Court "has not defined 'serious injury' for purposes of assault prosecutions, other than stating that '[t]he injury must be serious but it must fall short of causing death' and that '[f]urther definition seems neither wise nor desirable.' " *State v. Ramseur*, 338 N.C. 502, 507, 450 S.E.2d 467, 471 (1994) (quoting *State v. Jones*, 258 N.C. 89, 91, 128 S.E.2d 1, 3 (1962)) (alterations in original). However, in *State v. Hedgepeth*, 330 N.C. 38, 54, 409 S.E.2d 309, 318-19 (1991), our Supreme Court adopted this Court's standard regarding "serious injury" in jury instructions, holding that "[i]n the absence of conflicting evidence, a trial judge may instruct the jury that injuries to a victim are serious as a matter of law if reasonable minds could not differ as to their serious nature."

In the instant case, defendant offered no evidence at trial to contradict the serious nature of Hendricks' injuries. Defendant's assertion in his brief that Dr. Bernat's testimony would support a finding that the wounds penetrated "only slightly below the skin and not so deeply as to cause substantial bleeding or any other significant injury" is without merit. Dr. Bernat testified at trial that six of Hendricks' wounds reached the subcutaneous tissue under the skin, "where if you cut yourself, you see a little fat and things underneath." Dr. Bernat testified further that when he "looked in the wound" at the base of Hendricks' thumb, he "could see the tendon close to her thumb that helps you bend your thumb and straighten it out." Hendricks suffered injuries to her cheek, lip, head, neck, and hands, and as a result of her injuries, Hendricks required approximately thirty to forty stitches and was hospitalized for two days. We conclude that this evidence is sufficient to support a determination that reasonable minds could not differ as to the serious nature of Hendricks' injuries, and therefore, the trial court's instructions did not contain an impermissible expression of opinion. Accordingly, defendant's first argument is overruled.

[4] Defendant next argues that the trial court committed plain error by refusing to submit to the jury the lesser-included offense of assault inflicting serious injury. Defendant contends that sufficient evidence was presented to support the submission of the offense. We disagree.

"A defendant 'is entitled to an instruction on lesser included offense[s] if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater.' " *State v. Uvalle*, 151 N.C. App. 446, 452-53, 565 S.E.2d 727, 731 (2002) (quoting *State v. Leazer*, 353 N.C. 234, 237, 539 S.E.2d 922, 924 (2000)) (alteration in original), *disc. review denied*, 356 N.C. 692, 579 S.E.2d 95 (2003). However, a lesser-included offense should not be submitted to the jury where "the evidence is sufficient to support a finding of all the elements of the greater offense, and there is no evidence to support a finding of the lesser offense." *State v. Nelson*, 341 N.C. 695, 697, 462 S.E.2d 225, 226 (1995). Thus, "[w]hether [a] defendant is entitled to an instruction on an offense which is a lesser included offense depends upon the evidence presented at trial." *Uvalle*, 151 N.C. App. at 454, 565 S.E.2d at 732.

Defendant asserts that the evidence in the instant case required an instruction on assault inflicting serious injury because the evidence presented "reasonable doubts about whether a knife was used at all." In *State v. Bell*, 87 N.C. App. 626, 635, 362 S.E.2d 288, 293 (1987), this Court held that it was plain error for the trial court not to submit the lesser-included offense of assault inflicting serious injury where there was "conflicting evidence" regarding whether the defendant used a firearm to assault the victim. We recognized that "[b]ased on the [evidence], the jury could have disbelieved that a weapon was involved at all, or could have believed that any shot fired was not the result of [the] defendant's use of a weapon[,]" and we concluded that "[t]here is simply no way to ascertain what verdict the jury might have reached had they been given an alternative which did not include the use of a deadly weapon." *Id.* However, after reviewing the record in the instant case, we conclude that the evidence did not require that the jury be instructed regarding a lesser-included offense.

Defendant contends that the presence of the broken bottle on the bed beside Hendricks was sufficient to demonstrate that her wounds may have been caused by the bottle rather than the knife. On cross-examination, defendant's counsel asked Dr. Bernat whether Hendricks' injuries were "consistent with glass from a broken bottle[.]" Dr. Bernat replied as follows:

> They could have been cuts from a broken bottle; they could have been cuts from a knife. When I was doing the wounds, I didn't find any broken glass. And they were all very clean, very straight. They weren't all jagged and things as if someone puts their hand

STATE v. CAUDLE

[172 N.C. App. 261 (2005)]

through a window or something. So if somebody had been cut with a clean piece of glass straight, I wouldn't have been able to tell the difference.

On redirect examination, the State asked Dr. Bernat to further describe Hendricks' wounds. Dr. Bernat replied as follows:

Ms. Hendricks' injuries were just very linear, very straight. They weren't like jagged, like a jagged piece of glass had cut it. I did not find any glass in her. I mean, there could be somebody who might have been holding a piece of glass and like the glass being slid on their hand, so they would have a nice clean cut with no glass in it. But the majority of glass injuries are usually because of a car accident or they fell onto a glass window or something like that.

Although Dr. Bernat testified that Hendricks' wounds "could have been cuts from a broken bottle," Dr. Bernat twice stated that he "didn't find any broken glass" in Hendricks' wounds, and he stated that Hendricks' wounds were "very clean, very straight[,]" not "like a jagged piece of glass had cut [them]." Dr. Bernat testified that "[t]he length of [Hendricks' wounds] was the same; the depth was the same." Dr. Bernat further testified that eighty percent of the patients with wounds on their head from shattered glass have "a little piece of glass or something" in their hair. According to Dr. Bernat, "somebody could get cut with a sharp clean piece of glass and get a linear cut, if someone went like this [indicating] and made very straight movements." However, Hendricks described the instrument used to wound her in detail, claiming that it was a short-handled kitchen knife with a steel blade that defendant used to "cut[] his rocks." She described defendant as "holding [her] down with one hand and stabbing [her] with the other." Although Mary Jane testified that she saw a broken bottle on the bed beside Hendricks, Mary Jane also testified that she saw defendant's hand "go up" and then "c[o]me back down" while defendant was "standing over top of [Hendricks]." Neither Hendricks nor Mary Jane testified that defendant cut Hendricks linearly with a piece of broken glass.

In light of the foregoing, we conclude that the evidence in the instant case is not so conflicting as to require the trial court to submit to the jury the issue of assault inflicting serious injury. The evidence is sufficient to support a finding of all the elements of assault with a deadly weapon inflicting serious injury, but insufficient to support a finding that defendant did not use a deadly weapon during the alter-

cation. Therefore, the trial court did not err by refusing to submit the lesser-included offense to the jury. Accordingly, defendant's second argument is overruled.

[5] Defendant's final argument is that the trial court erred by sentencing him in the aggravated range. Defendant asserts that the trial court was prohibited from sentencing him in the aggravated range because the issue was not submitted to the jury. We agree.

In *State v. Allen*, 359 N.C. 425, —— S.E.2d —— (Filed 1 July 2005) (No. 485PA04), our Supreme Court recently examined the constitutionality of this state's structured sentencing laws and procedures in light of the United States Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435 (2000) and *Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403 (2004). The Court concluded in *Allen* that, when "[a]pplied to North Carolina's structured sentencing scheme, the rule of *Apprendi* and *Blakely* is: Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed presumptive range must be submitted to a jury and proved beyond a reasonable doubt." 359 N.C. at 437, —— S.E.2d at —— (citing *Blakely*, 542 U.S. at ——, 159 L. Ed. 2d at 413-14; *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455; N.C. Gen. Stat. §§ 15A-1340.13, 15A-1340.14, 15A-1340.16, 15A-1340.17). In the instant case, following defendant's conviction for assault with a deadly weapon inflicting serious injury, the trial court found as an aggravating factor that defendant committed the offense while on pretrial release on another charge. The trial court unilaterally found this factor and failed to submit it to the jury for proof beyond a reasonable doubt. Although the State contends that defendant admitted to the aggravating factor at sentencing, after careful review of the transcript, we are unable to conclude that defendant affirmatively admitted that the aggravating factor applies to the instant case. Therefore, in light of our Supreme Court's decision in *Allen*, we conclude that the trial court committed reversible error.[2] Accordingly, we remand the case for resentencing.

[6] 2. Defendant also asserts that the trial court was prohibited from sentencing him in the aggravated range because the State failed to allege the pertinent aggravating factor in the indictment. However, our Supreme Court expressly rejected the same assertion by the defendant in *Allen*. 359 N.C. at 438, —— S.E.2d at —— (overruling language in *State v. Lucas*, 353 N.C. 568, 548 S.E.2d 712 (2001), "requiring sentencing factors which might lead to a sentencing enhancement to be alleged in an indictment[,]" finding no error in the State's failure to include aggravating factors in the defendant's indictment, and noting that in *State v. Hunt*, "[T]his Court concluded that 'the Fifth Amendment would not require aggravators, even if they were fundamental equivalents of elements of an offense, to be pled in a state-court indictment.' " (quoting

No error in part; remanded for resentencing.

Chief Judge MARTIN and Judge HUDSON concur.

———————

*State v. Hunt,* 357 N.C. 257, 272, 582 S.E.2d 593, 603, *cert. denied,* 539 U.S. 985, 156 L. Ed. 2d 702 (2003)). Accordingly, defendant's assertion in the instant case is overruled as well.