IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-443

Filed: 18 February 2020

Wake County, No. 17CRS208127, 17CRS001541

STATE OF NORTH CAROLINA

v.

ROBERT LEE HODGE, Defendant.

Appeal by Defendant from judgment entered 17 July 2018 by Judge Rebecca W. Holt in Wake County Superior Court. Heard in the Court of Appeals 13 November 2019.

*Attorney General Joshua H. Stein, by Assistant Attorney General Joseph L. Hyde, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Amanda S. Hitchcock, for the Defendant.*

BROOK, Judge.

Robert Lee Hodge ("Defendant") appeals from judgment entered upon a jury verdict finding him guilty of attaining the status of habitual felon. Defendant argues that the trial court lacked subject matter jurisdiction to sentence him as a habitual felon because the original habitual felon indictment was marked "not a true bill" by the grand jury foreman. Defendant also argues that the trial court abused its discretion when it granted the State's request for a continuance upon the trial court's discovery that the indictment charging Defendant as a habitual felon was so marked.

Because we find that the trial court retained jurisdiction over the proceeding by granting the State's motion for a continuance, and that it did not abuse its discretion in granting that continuance, we find no error.

## I. Background

Defendant was charged with three counts of residential breaking and entering, three counts of larceny after breaking and entering, two counts of obtaining property by false pretenses, and one count of felonious possession of stolen goods. The State also ostensibly indicted Defendant for attaining the status of habitual felon on 7 November 2017, and Defendant waived arraignment on this charge. However, the grand jury returned the indictment marked "NOT A TRUE BILL[.]"

A trial was held on the substantive charges before Judge Henry W. Hight, Jr., from 9 April 2018 to 12 April 2018. At the beginning of trial, counsel for the State listed the charges Defendant faced, including referencing the habitual felon indictment. At the close of the State's evidence, Defendant moved to dismiss the charges of breaking and entering, larceny after breaking and entering, and one count of obtaining property by false pretenses; the trial court granted the motions and dismissed the charges. The jury found Defendant not guilty of felony breaking and entering and felony larceny but found Defendant guilty of one count of obtaining property by false pretenses and of the lesser included offense of non-felonious possession of stolen goods. The charges of which the jury found Defendant guilty

resulted from the jury's finding that Defendant knowingly possessed five stolen videogames and sold those videogames to a pawn shop for $12.

After the jury returned its verdict, a bench conference was held off the record to discuss the trial court's discovery that the habitual felon indictment was marked "NOT A TRUE BILL[.]" The State then requested to continue sentencing pursuant to *State v. Oakes*, 113 N.C. App. 332, 438 S.E.2d 477 (1994) "so that the State can go to the grand jury and apply for a new indictment, a superseding indictment." The prosecutor acknowledged that the habitual felon indictment in the case file was marked "NOT A TRUE BILL[.]" In support of its motion, the State argued that Defendant "was on notice from the moment that we discussed the habitual felon indictment that . . . the State was proceeding with this case habitually if he was convicted of the substantive felonies."

The trial court agreed that Defendant had notice of the State's intention to seek sentencing enhancements under the habitual felon statute, and that "until the court discovered that it was not a true bill, [] everyone was proceeding as if there was a valid true bill as to the status of the defendant." The trial court continued judgment and sentencing until 21 May 2018. The State sought a superseding indictment on the charge of habitual felon status, which a grand jury returned 17 April 2018.

Defendant was arraigned on the charge of attaining the status of habitual felon before Judge Vince Rozier on 20 April 2018. A trial was then held on that charge on

21 May 2018 before Judge Hight, Jr. Before the trial began, Defendant renewed his motion to dismiss for lack of jurisdiction. The State called Assistant Clerk of Superior Court Sonya Clodfelter to testify at Defendant's trial on the status of being a habitual felon.

The jury began deliberations, and outside the presence of the jury, Ms. Clodfelter testified again on voir dire. Ms. Clodfelter testified as to the process that resulted in the original copies indicating different findings by the grand jury:

> [MS. CLODFELTER]: After testifying or finishing testifying this morning, I went back downstairs to do some research to find out if we had a scanned copy of the true bill of indictment that was issued on November 7, 2017.
>
> Our office has been scanning indictments for the last two years, and so after digging through our scanned copies, I found a scanned copy of the original showing it was a true bill of indictment.
>
> I knew there was an issue with this case and so I brought it to Judge Hight's attention this afternoon.
>
> THE COURT: And what happened to the scan?
>
> [MS. CLODFELTER]: The scanned copy, back in 2017, we were receiving two copies, two original copies from the grand jury. The first copy, separated, goes to the attorney or it goes to the magistrate's office if we have to issue a warrant for arrest for the serving of the true bill of indictment.
>
> The second copy goes in the court file since they are both originals. So the original of this copy that was scanned in would have gone to the magistrate's office for service when the order for arrest was served on the defendant.

None of the original copies are file stamped. Ms. Clodfelter testified that when the clerk's office sends one copy to the defendant to provide notice and retains the other for the court records, "we separate the two copies, assuming that they are the same[.]"

One juror experienced a family emergency during an overnight recess from deliberations, and the trial court excused her and declared a mistrial. A second trial on the charge of attaining the status of habitual felon was held before Judge Rebecca W. Holt from 16 July 2018 to 17 July 2018. At the beginning of this trial, Defendant again moved to dismiss the indictment for lack of jurisdiction. The trial court denied the motion, finding that the State had jurisdiction as a result of the superseding indictment returned 17 April 2018.

At the close of all evidence, Defendant renewed the motion to dismiss for lack of subject matter jurisdiction based on the irregularities in the indictments charging Defendant with the status of being a habitual felon. The trial court denied the motion, finding that the State was proceeding on the superseding indictment, returned as a true bill. The jury found Defendant guilty of attaining the status of habitual felon. The trial court entered judgment on the jury verdicts and sentenced Defendant on both the underlying charges and the charge of attaining the status of habitual felon. The trial court sentenced Defendant to a minimum of 115 and a maximum of 150 months in prison.

Defendant entered notice of appeal orally, and appellate counsel was appointed.

## II. Standard of Review

Questions of subject matter jurisdiction are questions of law, which we review de novo. *State v. Armstrong*, 248 N.C. App. 65, 67, 786 S.E.2d 830, 832 (2016).

North Carolina General Statutes § 15A-1334(a) provides that "[e]ither the defendant or the State may, upon a showing which the judge determines to be good cause, obtain a continuance of the sentencing hearing." N.C. Gen. Stat. § 15A-1334(a) (2019). Therefore, we review a decision to allow a continuance for an abuse of discretion. *Oakes*, 113 N.C. App. at 336, 438 S.E.2d at 479. "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).

## III. Analysis

Defendant argues that because the original habitual felon indictment was marked "NOT A TRUE BILL" by the grand jury foreman, it was not an indictment, and the trial court did not have jurisdiction to sentence Defendant as a habitual felon. As such, Defendant further argues that the trial court was required to enter judgment upon the jury verdicts for the underlying substantive felony and to deny the State's motion for a continuance. Defendant argues that the trial court abused its discretion

in granting the State's motion for a continuance to allow the State to procure a valid indictment on the charge of habitual felon because the decision to continue sentencing was "an error of law that undermines public faith in the criminal justice system."

A. Jurisdiction to Sentence Defendant

Criminal defendants possess "the right to be charged by a lucid prosecutive statement which factually particularizes the essential elements of the specified offense." *State v. Sturdivant*, 304 N.C. 293, 309, 283 S.E.2d 719, 730 (1981). The Habitual Felons Act contemplates that defendants will be so charged through "the finding of a true bill by the grand jury." N.C. Gen. Stat. § 14-7.3 (2019); *see also State v. Langley*, 371 N.C. 389, 394, 817 S.E.2d 191, 195 (noting "a valid indictment is an essential of jurisdiction" in this context and reviewing statutorily required contents of valid habitual felon indictment) (internal marks and citation omitted).[1]

Moreover, a valid habitual felon indictment does not in and of itself grant a trial court jurisdiction to hear the proceeding. In order for the superior court to have jurisdiction to enter judgment on a charge of attaining the status of habitual felon, the indictment alleging the defendant's status as a habitual felon must be "part of,

---

[1] The State argues that "Defendant is not constitutionally entitled to an indictment for habitual felon status, and nothing in the Habitual Felons Act requires a grand jury to attest to a true bill" here. We disagree. As noted above, the Habitual Felons Act and governing case law do not permit the State to proceed pursuant solely to an indictment marked "NOT A TRUE BILL." Further, our Constitution states clearly that "no person shall be put to answer any criminal charge but by indictment, presentment, or impeachment[,]" N.C. Const. Art 1, § 22; no such valid predicate to the habitual felon prosecution at issue existed before the grand jury returned a true bill on 17 April 2018.

and ancillary to, the prosecution of defendant for the underlying felony, for which no judgment" has yet been entered. *Oakes*, 113 N.C. App. at 340, 438 S.E.2d at 482. A proceeding to establish a defendant's status as a habitual felon may not be "independent from the prosecution of some substantive felony[.]" *State v. Allen*, 292 N.C. 431, 434, 233 S.E.2d 585, 587 (1977). Consequently, if an indictment is returned after judgment has been entered on all substantive felony proceedings upon which a habitual felon charge is based, the indictment must be dismissed. *Id.* at 436, 233 S.E.2d at 589; *Oakes*, 113 N.C. App. at 340, 438 S.E.2d at 482.

The trial court had jurisdiction under these facts. While the State could not establish jurisdiction over the habitual felon charge without evidence beyond a charging document marked "NOT A TRUE BILL[,]" the State obtained a valid indictment before judgment was entered on the substantive felony. Because judgment had not been entered, the habitual felon indictment was still "part of, and ancillary to," an underlying felony and, as a consequence, the trial court retained jurisdiction. *Oakes*, 113 N.C. App. at 340, 438 S.E.2d at 482.

B. Trial Court's Order Continuing Judgment

Given that the trial court retained jurisdiction over the habitual felon indictment here only by continuing judgment on the underlying felony, we turn now to whether the trial court properly continued judgment.

"A judgment will not be disturbed because of sentencing procedures unless there is a showing of abuse of discretion, procedural conduct prejudicial to defendant, circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play." *Id.* at 337, 438 S.E.2d at 480 (citation omitted). In assessing the continuance at issue here we bear in mind that "[o]ne basic purpose behind our Habitual Felons Act is to provide notice to defendant that he is being prosecuted for some substantive felony *as a recidivist.*" *Allen*, 292 N.C. at 436, 233 S.E.2d at 588 (emphasis in original); *see also Oakes*, 113 N.C. App. at 339, 438 S.E.2d at 481 ("As *Allen* makes clear, the critical issue is whether defendant had notice of the allegation of habitual felon status at the time of his plea to the underlying substantive felony charge.").

Defendant first argues that the trial court's decision to grant a continuance under these circumstances was "exceedingly prejudicial" because it resulted in an exponential increase in his sentence. The argument is straightforward: the continuance prejudiced Defendant because the habitual felon charge increased his sentence from 20 to 30 months to between nine-and-a-half and twelve-and-a-half years. Relatedly, Defendant highlights the undeniable outrageousness of incarcerating him for, at a minimum, the better part of a decade for knowingly possessing five stolen video games.

Our Court, however, has not made punishment the determinative factor in the proscribed procedural prejudice inquiry. In *Oakes*, a continuance granted at the same moment in the proceeding to remedy the same general malady, a defect in indicting the Defendant on habitual felon grounds, did not establish prejudice. 113 N.C. App. at 339-40, 438 S.E.2d at 481. The continuance in *Oakes* also resulted in an exponential increase in the defendant's sentence. *Id.* at 334, 438 S.E.2d at 478.

And, as there, Defendant had notice that the State was pursuing a habitual charge here. Defendant waived arraignment on the charge of being a habitual felon before trial on the substantive charges. Each participant in the proceedings against Defendant was operating under the impression that the grand jury had returned a valid habitual felon indictment and that the State intended to prosecute Defendant as a recidivist. Neither Defendant, nor defense counsel, nor counsel for the State, nor the trial court realized the indictment in the court file was marked "NOT A TRUE BILL" until the trial court discovered as much after the jury returned its verdicts.

As such, despite the highly irregular nature of the proceedings and the grossly disproportionate sentence that resulted, Defendant did not suffer prejudicial procedural conduct. *Id.*

Defendant next argues that the trial court's decision to continue the sentencing proceeding to allow the State to seek a superseding indictment manifested an abuse of discretion because the proceedings offended the public sense of fair play and

"undermine[d] public faith in the criminal justice system." Defendant contends that our Court should not be seen to condone the State's mistake here by permitting the State to correct its error at the eleventh hour. Defendant undoubtedly raises important concerns; however, we cannot hold that the trial court's grant of the continuance was manifestly unsupported by reason. *See Hennis*, 323 N.C. at 285, 372 S.E.2d at 527. Indeed, the trial court expressed concern regarding continuing the proceedings, but its comments do not suggest an absence of reason:

> THE COURT: I am sure that there is an innocent reason why we have two different documents. I am concerned about the integrity of the court file, so I will have to call somebody to do an investigation on it to determine why we have got different things. It might be fine. It may not. But I don't think that would defer our proceeding at this point. They can do that. I don't believe they depend upon each other.

We are not insensitive to the notion that granting the State time to fix its error at a moment when the only evidence in the court file suggested the grand jury did not find probable cause to indict Defendant could, under different circumstances, offend the public sense of fair play. However, any public perception of irregularity was cured here by the return of a true bill by the grand jury on 17 April 2018.

Consequently, we cannot say that the trial court's grant of a continuance so offended the public sense of fair play that it constituted an abuse of discretion. *See Oakes*, 113 N.C. App. at 336-37, 438 S.E.2d at 479-80.

IV. Conclusion

The trial court retained jurisdiction at the moment it discovered the State's habitual felon indictment error. The State thus could still and, in fact, did seek to rectify its mistake by requesting a continuance and procuring a valid indictment. We need not agree with the trial court's finding of good cause to nevertheless hold it did not abuse its discretion. *See State v. Cummings*, 361 N.C. 438, 447, 648 S.E.2d 788, 794 (2007) (reviewing for abuse of discretion "we consider not whether we might disagree with the trial court, but whether the trial court's actions are fairly supported by the record."). Therefore, we must find no error.

NO ERROR.

Judge STROUD concurs.

Judge MURPHY dissents by separate opinion.

MURPHY, Judge, dissenting.

Is a defective indictment the same as a nonexistent indictment?  If I buy a car and get a car without an engine, that is a defective car.  If I ask for a car and get a covered wagon, that is *not* a defective car.  I can fix an engineless car; I cannot transform a covered wagon into a car.  What we have here is the covered wagon of indictments.

I cannot agree with the Majority's view that, when determining a trial court's ability to retain jurisdiction over a habitual felon indictment, sufficient notice alongside a *defective* indictment is the same as sufficient notice alongside a *nonexistent* indictment.  *Compare State v. Oakes*, 113 N.C. App. 332, 334, 438 S.E.2d 477, 478 (1994) (considering an habitual felon indictment that "failed to allege the underlying felony with particularity"), *with State v. Allen*, 292 N.C. 431, 432, 233 S.E.2d 585, 586 (1977) (considering "an independent proceeding purportedly pursuant to the North Carolina Habitual Felons Act" where "defendant was indicted, tried and convicted of being an habitual felon" in the absence of a cognizable offense).  Especially when the statute tells us "the proceedings shall be as if the issue of habitual felon were a principal charge[,]"  N.C.G.S. § 14-7.5 (2019),  and "does not authorize a proceeding independent from the prosecution of some substantive felony for the sole purpose of establishing a defendant's status as an habitual felon."  *Allen*, 292 N.C. at 434, 233 S.E.2d at 587.  Hence, I cannot agree with the Majority that the facts of this case fail to show an "abuse of discretion, procedural conduct prejudicial

to defendant, circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play." *Oakes*, 113 N.C. App. at 337, 438 S.E.2d at 480 (internal quotation marks and citation omitted).

The facts of Defendant's case are qualitatively different from *Oakes* and qualitatively similar to *Allen*. *Oakes*'s reasoning relied on the reasoning and holding of *Allen*, and both cases relied on the existence of a defective true bill of indictment or a valid, but after-the-fact, true bill of indictment.

In *Allen*, there was no habitual felon indictment until after the defendant was sentenced for an underlying felony. Our Supreme Court held the State could not "bring [an] independent proceeding to declare [the defendant] an habitual felon when the indictment itself revealed that before it was returned all the proceedings by which he had been found guilty of the underlying substantive felonies had been concluded." *Allen*, 292 N.C. at 432, 233 S.E.2d at 586. Our Supreme Court emphasized that "[o]ne basic purpose behind our Habitual Felons Act is to provide notice to defendant that he is being prosecuted for some substantive felony *as a recidivist*." *Id.* at 436, 233 S.E.2d at 588. It never said that was the only purpose.

In *Oakes*, we extended the notice-purpose rationale of *Allen*. We considered an indictment that was defective for failing to allege an underlying felony with particularity. *Oakes*, 113 N.C. App. at 334, 438 S.E.2d at 478. We stated that "[t]he sentencing phase of a criminal prosecution constitutes a significant component of the

2

prosecutorial process." *Id.* at 339, 438 S.E.2d at 481. We held, relying on *Allen*, that "for the purpose of our habitual felon laws, until judgment was entered upon defendant's conviction of [his underlying felony], there remained a pending, uncompleted felony prosecution to which a new habitual felon indictment could attach." *Id.* Later in the opinion, we also declared "the defect in the initial habitual felon indictment" did not cause the trial court to lose jurisdiction for two reasons: (1) the defect was "technical"; and (2) that defect "was not such as to deprive defendant, when entering his plea to the substantive charge, of notice and understanding that the State was seeking to prosecute [defendant] on that charge as a recidivist." *Id.* at 339-40, 438 S.E.2d at 481. Part of our reasoning was that "[a]t the time defendant entered his plea to the underlying substantive felony and proceeded to trial, there was pending against him an habitual felon indictment presumed valid by virtue of its 'return by the grand jury as a true bill.'" *Id.* at 339, 438 S.E.2d at 481 (quoting *State v. Mitchell*, 260 N.C. 235, 238, 132 S.E.2d 481, 482 (1963)). Unlike *Allen*, our holding in *Oakes* depended on the existence of a true bill of indictment presumed valid.

In habitual felon status proceedings, the first step of having a valid indictment is at least as important as the last step of sentencing. Although a significant step in prosecuting a case is sentencing, so too is having a true bill of habitual felon status indictment to attach to an underlying felony.

3

The facts here are more akin to the independent proceeding in *Allen* than the ancillary proceeding in *Oakes*. At sentencing, Defendant's attorney aptly argued why *Oakes* should not apply to this case:

> Your Honor, I would object to the State's motion to continue[. U]nderstanding that their argument based on *State v. Oakes* is that they can, when an indictment is found to be defective, still seek an effective indictment, and I think that's well established in this case. *However, that's not what we have here. We don't have a defective indictment. We don't have a true bill. . . .*
>
> As far as we know, as far as anyone other than the people in [the grand jury room] know, they issued – they came up with not a true bill and it's signed by the foreperson for that grand jury. That is their will. That is that body's will. . . .
>
> What we know is that we have an indictment that is issued as not a true bill that is signed by a foreperson in the file. That's it. . . .
>
> There is nothing at this point -- there is no accusatory instrument that Your Honor can continue judgment on in order to at this point sentence down the road on a new -- on a new instrument. . . .
>
> A continuance at this point is to allow the State to seek a different answer from another jury, *not to fix a defect*, and so I don't believe *State v. Oakes* applies.

Indeed, the indictment in this case was not marred by a "technical" defect as in *Oakes* —it did not exist. The State could not request a continuance to get a true bill of indictment when no indictment existed because this is functionally the same after-the-fact independent proceeding as in *Allen*. The trial judge should have commenced sentencing the moment the State presented him with a covered wagon.

4

Moreover, having a true bill at the time a defendant pleads guilty or not guilty to the underlying felony is more important as a matter of due process than notice. The Majority's holding invites a dereliction of duty. Now, all the State must do is give notice in some unprescribed manner. I anticipate a future argument wherein the State relies only on an oral communication with counsel and having delivered defendant's prior history, and then, when the defendant is about to be sentenced upon conviction for a felony, ask for a continuance to seek an indictment for habitual felon status. I cannot support even a preliminary step in that direction. Such a procedure is totally out of line with *Allen*, the Habitual Felon Act, and notions of procedural due process. The result here is beyond the boundaries of due process. What happened here was an "abuse of discretion, procedural conduct prejudicial to defendant, circumstances which manifest inherent unfairness and injustice, [and] conduct which offends the public sense of fair play." *Oakes*, 113 N.C. App. at 337, 438 S.E.2d at 480 (internal quotation marks and citation omitted).

Therefore, I respectfully dissent.