IN THE COURT OF APPEALS OF NORTH CAROLINA

 2022-NCCOA-259

 No. COA21-228

 Filed 19 April 2022

 Surry County, No. 20 JB 68

 IN THE MATTER OF: J.A.D., a minor juvenile.

 Appeal by Respondent-Juvenile from orders entered 11 December 2020 by

 Judge Thomas B. Langan in Surry County District Court. Heard in the Court of

 Appeals 14 December 2021.

 Attorney General Joshua H. Stein, by Assistant Attorney General Melissa K.
 Walker, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Jillian C.
 Katz, for the Respondent-Juvenile.

 GRIFFIN, Judge.

¶1 Respondent-juvenile J.A.D. (“Jeremy”)1 appeals from the trial court’s orders

 adjudicating him delinquent for extortion of a classmate and entering a disposition of

 probation. Jeremy challenges his adjudication and disposition at each step of the

 proceedings, arguing (1) the State’s failure to name the victim in his juvenile petition

 1 We use a pseudonym to protect the anonymity of the juvenile and for ease of reading.

 See N.C. R. App. P. 42(b).
 IN RE: J.A.D.

 2022-NCCOA-259

 Opinion of the Court

 was a fatal defect; (2) the evidence presented at the adjudication hearing did not show

 that his alleged threat was a “true threat” warranting punishment; (3) the evidence

 concerning his threat fatally varied from the language alleged in his juvenile petition;

 (4) the trial court failed to make sufficient written findings of fact in his adjudication

 order; and (5) the trial court failed to make sufficient written findings of fact in his

 disposition order. After review, we discern no error in Jeremy’s adjudication, but

 remand each order for additional findings of fact.

 I. Factual and Procedural Background

¶2 This is a case of an alleged extortion of favors from a middle school student by

 her classmate through the threat of revealing partially unclothed images to other

 students. The evidence at the adjudication hearing tended to show as follows:

¶3 Sometime in early 2020, Jeremy and three of his classmates were working on

 an assignment together and using their cell phones in their eighth-grade classroom.

 Cecilia2, one of the three classmates, showed messages on her cell phone to the group.

 Either by permission or by grabbing the phone from Cecilia, Jeremy came into

 possession of Cecilia’s cell phone. Jeremy then ran out of the classroom and into the

 bathroom for a short period of time. His teacher made him come back to the

 classroom, where he returned Cecilia’s phone and was then sent to the principal’s

 2 A pseudonym. See N.C. R. App. P. 42(b).
 IN RE: J.A.D.

 2022-NCCOA-259

 Opinion of the Court

 office.

¶4 On 26 February 2020, Cecilia reported to school administration that “a picture

 of [her] in underwear and a bra” was “being used by three eighth graders” to “obtain

 items from the cafeteria.” Two of Jeremy’s friends repeatedly used the picture to

 make Cecilia buy them cookies for approximately three to four months. Cecilia also

 reported that Jeremy “asked [her] to do his math homework.” When she refused,

 Jeremy said he and his friends “would expose the picture of [her] to [her] face.”

 Jeremy told her, “We always have that picture, you don’t want that going around.”

¶5 The School Resource Officer (“SRO”) investigated Cecilia’s report. Jeremy

 admitted to the SRO that he had taken Cecilia’s phone, and the SRO confirmed that

 Cecilia had a picture of herself in underwear and a bra saved on her phone at that

 time. The SRO observed Jeremy and his friends using Snapchat on school computers

 and believed they had used the software to share the picture of Cecilia. Following his

 investigation, the SRO filed a juvenile petition against Jeremy for extortion on 12

 May 2020.

¶6 The trial court continued the juvenile petition on 2 June 2020, and continued

 it once again on 31 July 2020. On 28 August 2020, the trial court denied a third

 motion to continue and dismissed the juvenile petition.

¶7 On 2 September 2020, a new, identical juvenile petition was filed once again

 alleging that Jeremy committed extortion. On 11 December 2020, the trial court held
 IN RE: J.A.D.

 2022-NCCOA-259

 Opinion of the Court

 an adjudicatory and dispositional hearing on the juvenile petition. The trial court

 adjudicated Jeremy delinquent on one count on extortion, entered a Level I

 disposition, and sentenced him to twelve months of probation. Jeremy timely

 appealed from the adjudication and disposition.

 II. Analysis

¶8 Jeremy asserts the trial court erred through five arguments challenging

 subject matter jurisdiction, the sufficiency of the evidence presented at the

 adjudication hearing, and the sufficiency of the written findings of fact in each of the

 trial court’s orders.

 A. Fatal Defect in Petition

¶9 Jeremy argues that the “trial court lacked subject matter jurisdiction where

 the petition was fatally defective because it failed to name the victim” of his alleged

 crime of extortion. We review the jurisdictional validity of a charging instrument de

 novo. See State v. Sturdivant, 304 N.C. 293, 308, 283 S.E.2d 719, 729 (1981).

¶ 10 “[A] petition in a juvenile action serves essentially the same function as an

 indictment in a felony prosecution and is subject to the same requirement that it aver

 every element of a criminal offense, with sufficient specificity that the accused is

 clearly apprised of the conduct for which he is being charged.” In re T.T.E., 372 N.C.

 413, 419, 831 S.E.2d 293, 297 (2019) (citation omitted). “When a petition is fatally

 deficient, it is inoperative and fails to evoke the jurisdiction of the court.” In re J.F.M.
 IN RE: J.A.D.

 2022-NCCOA-259

 Opinion of the Court

 & T.J.B., 168 N.C. App. 143, 150, 607 S.E.2d 304, 309 (2005) (citation omitted). “[I]t

 is not the function of [a charging instrument] to bind the hands of the State with

 technical rules of pleading; rather, its purposes are to identify clearly the crime being

 charged, thereby putting the accused on reasonable notice to defend against it and

 prepare for trial, and to protect the accused from being jeopardized by the State more

 than once for the same crime.” Sturdivant, 304 N.C. at 311, 283 S.E.2d at 731

 (citation omitted).

¶ 11 “Because juvenile petitions are generally held to the standards of a criminal

 indictment, we consider the requirements of the indictments of the offenses at issue.”

 J.F.M., 168 N.C. App. at 150, 607 S.E.2d at 309 (citation omitted). Jeremy was

 adjudicated and held responsible for extortion under N.C. Gen. Stat. § 14-118.4

 (2019). Section 14-118.4 states that

 Any person who threatens or communicates a threat or
 threats to another with the intention thereby wrongfully to
 obtain anything of value or any acquittance, advantage, or
 immunity is guilty of extortion and such person shall be
 punished as a Class F felon.

 N.C. Gen. Stat. § 14-118.4. “‘Extortion may be defined as wrongfully obtaining

 anything of value from another by threat, duress, or coercion.’” State v. Privette, 218

 N.C. App. 459, 474, 721 S.E.2d 299, 310 (2012) (quoting Harris v. NCNB Nat. Bank

 of N.C., 85 N.C. App. 669, 675, 355 S.E.2d 838, 843 (1987) (citing Black’s Law

 Dictionary 696 (rev. 4th ed.1968))).
 IN RE: J.A.D.

 2022-NCCOA-259

 Opinion of the Court

¶ 12 The juvenile petition alleging extortion in this case stated:

 [Jeremy] did unlawfully, willfully, and feloniously . . .
 threaten or communicate threat [sic] to another with the
 intent to obtain wrongfully anything of value, any
 acquittance, and advantage or any immunity.
 ...
 [Jeremy] did obtain a digital image/picture of the victim
 without or [sic] knowledge or consent, the photo of the
 victim only wearing a bra and underwear was then used by
 [Jeremy] to obtain food from the school cafeteria, while
 threatening to expose the picture if the victim refused to
 buy or do what he asked.

 The petition did not name Cecilia as the victim to whom Jeremy made his threat.

¶ 13 Jeremy argues the petition was fatally defective because it did not name

 Cecilia, and instead referred only to “another” and “the victim.” Jeremy does not cite

 authority which states that a charging instrument for extortion must name the

 victim. Rather, Jeremy derives his argument from the rule for charging armed

 robbery set out in this Court’s opinion in State v. Oldroyd, 271 N.C. App. 544, 843

 S.E.2d 478 (2020), rev’d, 2022-NCSC-27. This Court’s opinion in Oldroyd has been

 reversed and is no longer binding.

¶ 14 In Oldroyd, the defendant was convicted of attempted armed robbery under an

 indictment which alleged the defendant attempted to commit armed robbery against

 “the person and presence of employees of the Huddle House . . . whereby the li[ves] of

 the Huddle House employees w[ere] threatened and endangered.” Id. at 548–49, 843

 S.E.2d at 481. This Court vacated the defendant’s conviction, holding that the
 IN RE: J.A.D.

 2022-NCCOA-259

 Opinion of the Court

 general naming of the victims as “Huddle House employees” was insufficient to give

 the trial court jurisdiction because the defendant’s “indictment for attempted armed

 robbery must have named a victim to be valid.” Id. at 551–52, 843 S.E.2d at 483.

¶ 15 The North Carolina Supreme Court reversed this Court’s decision in Oldroyd,

 holding the indictment was “a plain and concise factual statement which conveyed

 the exactitude necessary to place [the defendant] on notice of the event or transaction

 against which he was expected to defend, to protect [him] from being placed in

 jeopardy twice for the same crime, and to guide the trial court in entering the correct

 judgment.” State v. Oldroyd, ___ N.C. ___, 2022-NCSC-27, ¶ 13; N.C. Gen. Stat. §

 924(a)(5) (2019). The Supreme Court held that the defendant’s indictment plainly

 and concisely “asserted facts supporting every element of the criminal offense . . . ,

 without allegations of an evidentiary nature, but with the sufficient precision which

 is statutorily required to inform [the] defendant of his alleged conduct. . . .” Id. ¶ 9.

 In reaching its conclusion, the Supreme Court placed emphasis on modern, less strict

 criminal pleading requirements set forth in the Criminal Procedure Act of 1975,

 which affected a “relaxation of the erstwhile common law criminal pleadings” and

 “signaled a shift ‘away from the technical rules of pleading.’” Id. ¶ 10 (citation

 omitted).

¶ 16 It is important that the indictment in Oldroyd did name the victims with some

 specificity, i.e., the “employees of the Huddle House.” In this case, Jeremy’s petition
 IN RE: J.A.D.

 2022-NCCOA-259

 Opinion of the Court

 named the victim by referring to Cecilia only as “the victim” and “another.”

¶ 17 Having acknowledged that the rule set forth by Jeremy has been overruled,

 and keeping modern pleading requirements in mind, we are left with the following

 question: what is the appropriate rule governing whether a victim must be named in

 a charging instrument for extortion? Neither party cites in their brief on appeal to

 any North Carolina precedent which dictates whether a charging instrument for

 extortion requires the victim to be named, much less to what degree of specificity the

 victim should be named. Our review has also revealed no such precedent. We return

 to our Courts’ armed robbery jurisprudence, as we find a comparison of armed robbery

 and extortion helpful in our analysis.

¶ 18 With respect to armed robbery, the North Carolina Supreme Court has

 repeatedly held

 it is not necessary that ownership of the property be laid in
 a particular person in order to allege and prove armed
 robbery. The gist of the offense of robbery is the taking by
 force or putting in fear. An indictment for robbery will not
 fail if the description of the property is sufficient to show it
 to be the subject of robbery and negates the idea that the
 accused was taking his own property.

 State v. Spillars, 280 N.C. 341, 345, 185 S.E.2d 881, 884 (1972) (emphasis added)

 (citing State v. Rogers, 273 N.C. 208, 212, 159 S.E.2d 525, 528 (1968); State v. Guffey,

 265 N.C. 331, 333, 144 S.E.2d 14, 16 (1965); State v. Sawyer, 224 N.C. 61, 66, 29

 S.E.2d 34, 37 (1944)); see Oldroyd, 271 N.C. App. at 553, 843 S.E.2d at 483–84
 IN RE: J.A.D.

 2022-NCCOA-259

 Opinion of the Court

 (Bryant, J., dissenting). The longstanding rule in North Carolina is that the language

 in the charging instrument for armed robbery must show only that the defendant

 used a dangerous weapon to take personal property from someone other than himself.

 See State v. Jackson, 306 N.C. 642, 650–51, 295 S.E.2d 383, 388 (1982); State v.

 Ballard, 280 N.C. 479, 485, 186 S.E.2d 372, 375 (1972).

¶ 19 Armed robbery and extortion are similar offenses which both criminalize the

 taking of property from another through threat of harm. See, generally, United States

 v. Harris, 916 F.3d 948, 955 (11th Cir. 2019) (“Extortion is ‘closely related to the crime

 of robbery, having in fact been created in order to plug a loophole in the robbery law

 by covering sundry threats which will not do for robbery.’” (quoting Wayne R. LaFave,

 Criminal Law § 20.4, 1335–36 (6th ed. 2017))); State v. Matthews, 274 N.C. App. 357,

 850 S.E.2d 357, 2020 WL 6736823, at *6 (2020) (unpublished) (“Both attempted

 armed robbery with a dangerous weapon and extortion require a use of threat to

 deprive another of personal property or to obtain something of value from the

 victim.”), review denied, 376 N.C. 902, 855 S.E.2d 278 (2021). “The gist of the offense

 of robbery is the taking by force or putting in fear.” Spillars, 280 N.C. at 345, 185

 S.E.2d at 884. The “gist” of extortion is also similarly the taking of something of value

 from the victim through the fear and apprehension of a threatened undesirable

 outcome.

¶ 20 However, as it pertains to how specifically a victim must be named, extortion
 IN RE: J.A.D.

 2022-NCCOA-259

 Opinion of the Court

 is materially distinguishable from armed robbery.

¶ 21 The crime of extortion could apply to “property” beyond items of personal

 property subject to robbery. It is clear from the statutory language that extortion

 applies where the defendant seeks to obtain “anything of value or any acquittance,

 advantage, or immunity.” N.C. Gen. Stat. § 14-118.4. “While an indictment for

 [armed robbery] need not allege actual legal ownership of property, the indictment

 must at least name a person who was in charge or in the presence of the property at

 the time of the robbery.” State v. Burroughs, 147 N.C. App. 693, 696, 556 S.E.2d 339,

 342 (2001). This requirement cannot be practically applied to all cases of extortion.

 The other properties enumerated in N.C. Gen. Stat. § 14-118.4 are not necessarily

 owned, possessed, or otherwise in the charge or presence of an extortion victim forced

 to provide them. See State v. Wright, 240 N.C. App. 270, 273, 770 S.E.2d 757, 759

 (2015).3

 3 In an effort to describe why extortion cannot be a lesser-included offense of armed

 robbery, our Court has explained:

 [T]he subject matter of the threat is much broader for the crime
 of extortion. Specifically, where armed robbery requires that the
 subject matter be personal property which is taken and carried
 away, extortion permits obtaining “anything of value or any
 acquittance, advantage, or immunity.” A thing “of value or
 acquittance, advantage, or immunity” could involve coercing
 someone not to file a civil suit or to go to the police rather than
 coercing someone to hand over an item of personal property.

 Wright, 240 N.C. App. at 273, 770 S.E.2d at 759 (internal citation omitted).
 IN RE: J.A.D.

 2022-NCCOA-259

 Opinion of the Court

¶ 22 Further, the naming requirement found in our courts’ armed robbery

 precedent stems from the notion that the specific identity of the victim is immaterial

 so long as it is clear that the defendant was not taking his own property. State v.

 Pratt, 306 N.C. 673, 681, 295 S.E.2d 462, 467 (1982) (“As long as it can be shown [the]

 defendant was not taking his own property, ownership need not be laid in a particular

 person to allege and prove robbery.” (citation omitted)). Indeed, North Carolina

 acknowledges a “claim of right” defense to the crime of armed robbery, which states

 that “[a] defendant is not guilty of robbery if he forcibly takes personal property from

 the actual possession of another under a bona fide claim of right or title to the

 property[.]” State v. Spratt, 265 N.C. 524, 526, 144 S.E.2d 569, 571 (1965); State v.

 Cox, 375 N.C. 165, 172, 846 S.E.2d 482, 487 (2020) (reaffirming in North Carolina

 “the right of a party to engage in ‘self-help’ and to forcibly take personal property

 from the actual possession of another under a bona fide claim or right to the

 property”). Our precedent shows, therefore, that the requirement that a victim be

 named with any specificity at all stems not from a material consideration of the

 victim’s identity, but from a need to affirmatively prove that the defendant acted with

 the requisite felonious intent to take another’s property, not to take his own. See

 Spratt, 265 N.C. at 526, 144 S.E.2d at 571; State v. Lawrence, 262 N.C. 162, 168, 136

 S.E.2d 595, 599–600 (1964); State v. Chase, 231 N.C. 589, 590, 58 S.E.2d 364, 365

 (1950).
 IN RE: J.A.D.

 2022-NCCOA-259

 Opinion of the Court

¶ 23 Extortion does not share armed robbery’s focus on the ownership of the

 valuable property the defendant obtains or seeks to obtain. “North Carolina does not

 recognize a ‘claim of right’ defense in extortion-related cases.” Privette, 218 N.C. App.

 at 477, 721 S.E.2d at 312. Rather, what matters is the wrongfulness of the method

 by which the defendant seeks to obtain something of value. State v. Greenspan, 92

 N.C. App. 563, 568, 374 S.E.2d 884, 887 (1989) (“The wrongful intent required by the

 statute refers to the obtaining of property and not to the threat itself.”). The

 gravamen of extortion is that the defendant sought to “attain property or some other

 acquittance, advantage, or immunity in an unlawful and unjust manner.” Privette,

 218 N.C. App. at 476, 721 S.E.2d at 312 (emphasis added).

¶ 24 We reject Jeremy’s broader contention that the rules dictating what

 information must be included in a charging instrument for armed robbery may be

 extended to charging instruments for extortion. The essential elements of extortion

 do not place the same weight on the identity of the victim that is inherent in the

 essential elements of armed robbery. We cannot say that modern criminal pleading

 requirements dictate a need to allege the identity of the victim in order to plead “[a]

 plain and concise factual statement . . . which, without allegations of an evidentiary

 nature, asserts facts supporting every element” of extortion “with sufficient precision

 clearly to apprise the defendant . . . of the conduct which is the subject of the

 accusation.” N.C. Gen. Stat. § 15A-924(a)(5). We hold that a charging instrument
 IN RE: J.A.D.

 2022-NCCOA-259

 Opinion of the Court

 charging extortion need only apprise the charged party of the material elements of

 the offense of extortion: (1) that a wrongful demand was made with (2) the intent to

 demand something of value.

¶ 25 In Jeremy’s case, the juvenile petition sufficiently alleged each essential

 element of extortion: that Jeremy did “threaten or communicate [a] threat” with the

 intent to “obtain wrongfully anything of value. . . .” The petition further alleged that

 Jeremy used a “photo of the victim only wearing a bra and underwear” and

 “threaten[ed] to expose the picture if the victim refused to buy or do what he asked.”

 The petition clearly apprised Jeremy of the conduct for which he was being charged

 with sufficient specificity to allow him to prepare an adequate defense. In re T.T.E.,

 372 N.C. at 419, 831 S.E.2d at 297; N.C. Gen. Stat. § 15A-924(a)(5). The trial court

 had jurisdiction over Jeremy’s extortion charge.

 B. Threat Element of Extortion

¶ 26 Jeremy next argues the “trial court erred by denying Jeremy’s motion to

 dismiss where . . . North Carolina’s extortion statute requires a threat of unlawful

 physical violence and . . . Jeremy did not make any such threat.” Jeremy contends

 that the crime of extortion in North Carolina is an “anti-threat” statute which

 punishes a defendant’s free speech in opposition to the First Amendment of the U.S.

 Constitution.

¶ 27 The State contends Jeremy failed to preserve this constitutional argument for
 IN RE: J.A.D.

 2022-NCCOA-259

 Opinion of the Court

 this Court’s review because he did not raise it during trial. See State v. Garcia, 358

 N.C. 382, 410, 597 S.E.2d 724, 745 (2004) (“It is well settled that constitutional

 matters that are not ‘raised and passed upon’ at trial will not be reviewed for the first

 time on appeal.” (citation omitted)). “In order to preserve an issue for appellate

 review, a party must have presented to the trial court a timely request, objection, or

 motion, stating the specific grounds for the ruling the party desired the court to make

 if the specific grounds were not apparent from the context.” N.C. R. App. P. 10(a)(1).

 “However, Rule 10 does not bind a party on appeal only to arguments identical to the

 ones offered in support of an objection at trial.” State v. McLymore, ___ N.C. ___,

 2022-NCSC-12, ¶ 17. “If a party’s objection puts the trial court and opposing party

 on notice as to what action is being challenged and why the challenged action is

 thought to be erroneous—or if the what and the why are ‘apparent from the

 context,’—the specificity requirement has been satisfied.” Id. (citing N.C. R. App. P.

 10(a)(1)).

¶ 28 During the adjudicatory hearing, Jeremy’s counsel moved to dismiss at the

 close of the State’s evidence because, in part, Jeremy’s “alleged threat is not really a

 threat.” At the close of all the evidence, Jeremy’s counsel again moved to dismiss,

 arguing “[Cecilia] simply ignored a juvenile remark, which [Jeremy] denies making,

 a juvenile remark that was made and never acted upon the alleged threat. . . . [T]his

 isn’t even a threat.” Jeremy’s counsel did not specifically refer to the First
 IN RE: J.A.D.

 2022-NCCOA-259

 Opinion of the Court

 Amendment as grounds for dismissal, but he did argue that the State failed to show

 that Jeremy made a punishable threat. It was “apparent from the context” of this

 argument that Jeremy’s counsel questioned whether Jeremy’s speech was

 punishable, and the trial court and the State should have been on notice that the case

 presented constitutional concerns. We hold that Jeremy preserved this issue for our

 review.

¶ 29 Jeremy asserts that “true threat” crimes require the State to show the

 defendant threatened “unlawful physical violence” as an essential element of the

 crime, and that the State was unable to show Jeremy made such a threat. We review

 the denial of a motion to dismiss for the State’s failure to present substantial evidence

 of each essential element of the crime charged de novo to determine whether, in the

 light most favorable to the State, there was “‘substantial evidence (1) of each essential

 element of the offense charged, or of a lesser offense included therein, and (2) of [the]

 defendant’s being the perpetrator of such offense.’” State v. Tucker, ___ N.C. ___,

 2022-NCSC-15, ¶ 10 (citations omitted).

¶ 30 Absent the alleged infringement on free speech, Jeremy’s argument fails to

 refute North Carolina extortion precedent. Restricting the crime of extortion to

 threats of physical violence would defeat the purpose of the crime. Agnostic of

 subsequent First Amendment jurisprudence, this Court has held that “[t]he

 definition of extortion in G.S. 14–118.4 covers any threat made with the intention to
 IN RE: J.A.D.

 2022-NCCOA-259

 Opinion of the Court

 wrongfully obtain ‘anything of value or any acquittance, advantage, or immunity.’”

 Greenspan, 92 N.C. App. at 567, 374 S.E.2d at 886–87 (emphasis added) (“[Offer[ing]

 to refrain from pressing criminal charges in exchange for money amounted to

 threatening criminal prosecution and clearly comes within the purview of the broad

 language, ‘a threat.’”). This Court has also incorporated the United States Court of

 Appeals for the Fourth Circuit’s recognition that “economic harm”—not just physical

 violence—is a sufficient threatened result to constitute extortion as defined in N.C.

 Gen. Stat. § 14-118.4. See id. at 566, 374 S.E.2d at 886 (citing Tryco Trucking Co. v.

 Belk Stores Servs., Inc., 634 F. Supp. 1327, 1334 (W.D.N.C. 1986)); Tryco, 634 F. Supp.

 at 1334 (“Fear of economic harm satisfies the definition that extortion is the obtaining

 of property from another with his consent induced by wrongful use of fear.” (citation

 omitted)).

¶ 31 Nonetheless, Jeremy’s argument asserts that current First Amendment

 jurisprudence imposes a different result. He contends that N.C. Gen. Stat. § 14-118.4

 is an “anti-threat” statute criminalizing threatening speech, and that all anti-threat

 statutes may only criminalize speech which threatens unlawful physical violence.

 Jeremy’s argument presents this Court with two questions. First, does the crime of

 extortion as defined in N.C. Gen. Stat. § 14-118.4 constitute an “anti-threat” statute

 subject to First Amendment “true threat” requirements? Second, if N.C. Gen. Stat. §

 14-118.4 is an anti-threat statute, does the statute therefore only apply to threats of
 IN RE: J.A.D.

 2022-NCCOA-259

 Opinion of the Court

 unlawful physical violence? Assuming without deciding that N.C. Gen. Stat. § 14-

 118.4 is an anti-threat statute, we hold that First Amendment jurisprudence does not

 limit application of the statute to threats of unlawful physical violence.

¶ 32 In State v. Taylor, the North Carolina Supreme Court recognized that “true

 threats” are one indisputable category of constitutionally proscribable free speech

 that is not protected by the First Amendment. State v. Taylor, 379 N.C. 589, 2021-

 NCSC-164, ¶ 18. Using U.S. Supreme Court decisions to guide its analysis, the Court

 in Taylor recognized that determining whether a defendant’s speech was a true threat

 required our courts to balance the State’s interest in protecting individuals’ safety

 with a speaker’s substantial right to “engage in controversial but constitutionally

 permissible speech[.]” Id. ¶ 24. “[W]hether a defendant’s particular statements

 contain a true threat” is a fact-specific evaluation, in which “a court must consider (1)

 the context in which the statement was made, (2) the nature of the language the

 defendant deployed, and (3) the reaction of the listeners upon hearing the statement,

 although no single factor is dispositive.” Id. (citing Watts v. United States, 394 U.S.

 705, 708 (1969)). The Court further determined that, in order to narrowly define the

 range of unprotected speech proscribable as true threats, “the State is required to

 prove [the speaker’s intent by] both an objective and a subjective element in order to

 convict [the] defendant” of a true threat offense. Id. ¶ 42.

¶ 33 Even if we assume that N.C. Gen. Stat. § 14-118.4 codifies the crime of
 IN RE: J.A.D.

 2022-NCCOA-259

 Opinion of the Court

 extortion as an anti-threat statute within the definition contemplated in Taylor, First

 Amendment “true threat” analysis does not require a threat to include “unlawful

 physical violence.” Jeremy cites to the following language from the United States

 Supreme Court’s decision in Virginia v. Black to support his contention that speech

 is only prosecutable as a true threat if it threatens unlawful physical violence:

 “True threats” encompass those statements where the
 speaker means to communicate a serious expression of an
 intent to commit an act of unlawful violence to a particular
 individual or group of individuals. The speaker need not
 actually intend to carry out the threat. Rather, a
 prohibition on true threats protects individuals from the
 fear of violence and from the disruption that fear
 engenders, in addition to protecting people from the
 possibility that the threatened violence will occur.
 Intimidation in the constitutionally proscribable sense of
 the word is a type of true threat, where a speaker directs a
 threat to a person or group of persons with the intent of
 placing the victim in fear of bodily harm or death.

 Virginia v. Black, 538 U.S. 343, 359–60 (2003) (internal citations and quotation

 marks omitted). We disagree with Jeremy’s characterization of this passage.

¶ 34 As noted in Taylor, “[n]either [our Supreme] Court nor the Supreme Court of

 the United States has ever explicitly defined the scope of the true threats exception

 to the First Amendment.” Taylor, 2021-NCSC-164, ¶ 19. Defendant’s cited language

 from Black only explains that threats which threaten unlawful physical violence are

 included under the overall umbrella of “true threats.” Indeed, in Taylor, our Supreme

 Court analyzed Black’s description of intimidation as a threat “with the intent of
 IN RE: J.A.D.

 2022-NCCOA-259

 Opinion of the Court

 placing the victim in fear of bodily harm or death”, but only to interpret whether the

 First Amendment required the State to prove the defendant’s subjective intent. Id.

 ¶ 33 (citation omitted). The Taylor Court never entertained the notion that a threat

 of unlawful physical violence could be a required element, concluding only that “Black

 [held] that a speaker’s subjective intent to threaten is the pivotal feature separating

 constitutionally protected speech from constitutionally proscribable true threats.” Id.

 There is no federal or North Carolina state constitutional rule that threats are

 protected speech unless they threaten unlawful physical violence.

¶ 35 The State was under no burden to prove that Jeremy threatened unlawful

 physical violence. The trial court did not err in denying Jeremy’s motion to dismiss.

 C. Fatal Variance in Evidence

¶ 36 Jeremy contends the “trial court erred by denying his motion to dismiss where

 there was a fatal variance between the ‘threat’ alleged in the petition and the proof

 at the hearing.”

¶ 37 We review de novo to determine whether the State fulfilled its burden of

 presenting substantial evidence of each essential element of the crime charged.

 Tucker, 2022-NCSC-15, ¶ 10. “A variance between the criminal offense charged and

 the offense established by the evidence is in essence a failure of the State to establish

 the offense charged.” State v. Waddell, 279 N.C. 442, 445, 183 S.E.2d 644, 646 (1971).

 To prevail on a motion to dismiss for a fatal variance, “the defendant must show a
 IN RE: J.A.D.

 2022-NCCOA-259

 Opinion of the Court

 fatal variance between the offense charged and the proof as to ‘[t]he gist of the

 offense[,]’” a variance with respect to an essential element. State v. Pickens, 346 N.C.

 628, 646, 488 S.E.2d 162, 172 (1997) (citations omitted).

¶ 38 Juvenile petitions alleging delinquency are charging instruments akin to

 criminal indictments. T.T.E., 372 N.C. at 419, 831 S.E.2d at 297. “[T]his Court has

 acknowledged the general rule that [a charging instrument] using ‘either literally or

 substantially’ the language found in the statute defining the offense is facially valid”,

 State v. Williams, 368 N.C. 620, 626, 781 S.E.2d 268, 272 (2016) (citation omitted),

 and charging instruments do not need to detail exact, specific events and evidence to

 distinctively plead the offense charged and avoid risks of double jeopardy. See State

 v. Rambert, 341 N.C. 173, 176, 459 S.E.2d 510, 512 (1995). “When an averment in an

 indictment is not necessary in charging the offense, it will be deemed to be

 surplusage.” Pickens, 346 N.C. at 646, 488 S.E.2d at 172 (citations and internal

 quotation marks omitted).

¶ 39 The petition in this case averred, inter alia, that “the photo of the victim only

 wearing a bra and underwear was then used by [Jeremy] to obtain food from the

 school cafeteria, while threatening to expose the picture if the victim refused to buy

 or do what he asked.” At trial, the State presented evidence which tended to show

 that Jeremy asked “[f]or [Cecilia] to do his homework”, and that two of Jeremy’s

 friends actually forced Cecilia to buy them cookies from the cafeteria. Jeremy asserts
 IN RE: J.A.D.

 2022-NCCOA-259

 Opinion of the Court

 that, “[a]s it stands now, a petition could be filed alleging that Jeremy asked Cecilia

 to do his math homework in exchange for not exposing the picture, thereby leaving

 him open to an adjudication for the same conduct.” We disagree.

¶ 40 The essential element of extortion at issue regarding this evidence is that the

 defendant’s wrongful threat was made for the purpose to “obtain anything of value or

 any acquittance, advantage, or immunity[.]” N.C. Gen. Stat. § 14-118.4. The exact,

 factual identification of the valuable property the defendant sought to obtain is

 immaterial so long as the State’s proof ultimately shows that the defendant obtained

 or attempted to obtain something of value. See supra pgs. 10-13 (discussing

 materiality of identity of property to offense of extortion). In this case, the language

 in the indictment explaining that Jeremy sought to “obtain food from the school

 cafeteria” was unnecessarily specific, and therefore surplusage. See Pickens, 346 N.C.

 at 646, 488 S.E.2d at 172. Further, Jeremy was appropriately apprised of the offense

 for which he was being charged. Regardless of whether the request was specifically

 for cookies or answers to homework, the petition placed Jeremy on notice of the

 factual circumstances surrounding his alleged offense. The evidence presented

 during the adjudication hearing did not create a fatal variance from the language of

 Jeremy’s juvenile petition.

 D. Written Findings Required by Section 7B-2411

¶ 41 Defendant also argues the “trial court erred by failing to make sufficient
 IN RE: J.A.D.

 2022-NCCOA-259

 Opinion of the Court

 findings of fact required by [N.C. Gen. Stat. §] 7B-2411 in its written adjudication

 order.” “An alleged violation of a statutory mandate is a question of law and reviewed

 de novo.” Matter of W.M.C.M., 277 N.C. App. 66, 2021-NCCOA-139, ¶ 29.

¶ 42 N.C. Gen. Stat. § 7B-2411 instructs:

 If the court finds that the allegations in the petition have
 been proved [beyond a reasonable doubt], the court shall so
 state in a written order of adjudication, which shall
 include, but not be limited to, the date of the offense, the
 misdemeanor or felony classification of the offense, and the
 date of adjudication.

 N.C. Gen. Stat. § 7B-2411 (2019); see N.C. Gen. Stat. § 7B-2409 (2019) (“The

 allegations of a petition alleging the juvenile is delinquent shall be proved beyond a

 reasonable doubt.”). “Section 7B-2411 does not require the trial court to delineate

 each element of an offense and state in writing the evidence which satisfies each

 element, and we recognize that section 7B-2411 does not specifically require that an

 adjudication order contain appropriate findings of fact.” In re J.V.J., 209 N.C. App.

 737, 740, 707 S.E.2d 636, 638 (2011) (citations and internal quotation and editing

 marks omitted). “Nevertheless, at a minimum, section 7B-2411 requires a court to

 state in a written order that ‘the allegations in the petition have been proved [beyond

 a reasonable doubt].’” Id. (citing N.C. Gen. Stat. § 7B-2411).

¶ 43 In In re J.V.J., the trial court’s adjudication order included only the following

 findings:
 IN RE: J.A.D.

 2022-NCCOA-259

 Opinion of the Court

 Based on the evidence presented, the following facts have
 been proven beyond a reasonable doubt:

 The court finds that Joseph is responsible.

 1391–ASSAULT GOVT OFFICAL/–14–33 (C)(4) CLASS
 1A MISD OCCURRED 11–23–09.

 Id. (internal editing marks omitted). The Court concluded that these findings were

 insufficient to satisfy N.C. Gen. Stat. § 7B-2411 and remanded for additional findings

 of fact. Id. at 741, 707 S.E.2d at 638.

¶ 44 Conversely, in In re K.C., the trial court’s adjudication order wrote out the

 juvenile’s offense date, offense, felony or misdemeanor classification in a clear table,

 and was file-stamped with the date of adjudication. In re K.C., 226 N.C. App. 452,

 460–61, 742 S.E.2d 239, 245 (2013). The adjudication order then stated:

 The following facts have been proven beyond a reasonable
 doubt: . . .

 After hearing all testimony in this matter the court finds
 beyond a reasonable doubt that the juvenile committed the
 offense of Sexual Battery and Simple Assault and he is
 ADJUDICATED DELINQUENT.

 Id. The Court concluded that the adjudication order “satisfie[d] the minimum

 requirements of section 7B-2411” because it “provide[d] the date of the offense, the

 fact that the assault [was] a class 2 misdemeanor, the date of the adjudication, and

 clearly state[d] that the court considered the evidence and adjudicated [the juvenile]

 delinquent as to the petition’s allegation . . . beyond a reasonable doubt.” Id. at 461,
 IN RE: J.A.D.

 2022-NCCOA-259

 Opinion of the Court

 742 S.E.2d at 245 (footnote omitted).

¶ 45 In the present case, the adjudication order included the date of Jeremy’s

 offense, the offense, and the felony/misdemeanor classification of the offense in the

 following table:

 Offense Offense (with Date Petition
 F/M Class Status
 Date statute number Filed
 11/01/2019 EXTORTION – 09/02/2020 F Class A through I X Delinq./Hearing
 14.118.4 felony

 The adjudication order then includes the following written finding of fact:

 The following facts have been proven beyond a reasonable
 doubt: . . .

 At the hearing before the judge, the juvenile was found to
 be responsible for extortion in violation of 14-118.4.

¶ 46 The State contends that the details of the adjudication order in this case are

 most similar to the order in In re K.C. We disagree, and find the order in this case is

 materially distinguishable from In re K.C. The adjudication orders in In re J.V.J., In

 re K.C., and the present case all share language pre-printed on the adjudication form:

 “The following facts have been proven beyond a reasonable doubt”. The order in In

 re K.C. reiterates the burden of proof in the language written after the pre-printed

 prompt, making it clear that, based upon evidence in the hearing, the trial court found

 the juvenile responsible beyond a reasonable doubt. The adjudication orders in In re

 J.V.J. and the present case rely solely on the pre-printed form language to comply
 IN RE: J.A.D.

 2022-NCCOA-259

 Opinion of the Court

 with the requirements of section 7B-2411.

¶ 47 We hold that the findings of fact in the adjudication order in this case were

 insufficient to comply with section 7B-2411. Section 7B-2411 requires the trial court

 to affirmatively state the burden of proof in its written findings, without regard to

 the pre-printed language on the form it chooses to use. The language in this case

 appears more thorough, but effectively states nothing more than the order stated in

 In re J.V.J.: a conclusory note that the juvenile was responsible for the offense

 charged. “As such, we remand this case to the trial court to make the statutorily

 mandated findings in [Jeremy’s] adjudication order.” In re J.V.J., 209 N.C. App. at

 741, 707 S.E.2d at 638.

 E. Written Findings Required by Sections 7B-2512 and 7B-2501(c)

¶ 48 Lastly, Defendant contends the “trial court erred by failing to make findings of

 fact to demonstrate that it considered each of the factors listed in [N.C. Gen. Stat. §]

 7B-2501(c).”

¶ 49 In a juvenile delinquency action, “[t]he dispositional order shall be in writing

 and shall contain appropriate findings of fact and conclusions of law.” N.C. Gen. Stat.

 § 7B-2512 (2019). Additionally, N.C. Gen. Stat. § 7B-2501(c) instructs that “the court

 shall select a disposition that is designed to protect the public and to meet the needs

 and best interests of the juvenile, based upon” five enumerated factors. N.C. Gen.

 Stat. § 7B-2501(c) (2019). “The plain language of Section 7B-2501(c) compels us to
 IN RE: J.A.D.

 2022-NCCOA-259

 Opinion of the Court

 find that a trial court must consider each of the five factors in crafting an appropriate

 disposition.” Matter of I.W.P., 259 N.C. App. 254, 261, 815 S.E.2d 696, 702 (2018).

¶ 50 In this case, the trial court indicated in its disposition order that it received,

 considered, and incorporated by reference Jeremy’s predisposition report, risks

 assessment, and needs assessment, and that it was “required to order a Level 1

 disposition.” The trial court used a disposition form which reminded it to state

 additional findings showing compliance with the five factors listed in N.C. Gen. Stat.

 § 7B-2501(c), but the trial court did not make any findings addressing the factors.

 See In re V.M., 211 N.C. App. 389, 392, 712 S.E.2d 213, 215–16 (2011) (finding

 insufficient findings of fact under N.C. Gen. Stat. § 7B-2501(c) and remanding for a

 new dispositional hearing, based upon identical factual circumstances). The record

 on appeal includes Jeremy’s predisposition report, risks assessment, and needs

 assessment that were incorporated by reference into the trial court’s written

 disposition order, but these documents also do not sufficiently address each of the

 N.C. Gen. Stat. § 7B-2501(c) factors. See I.W.P., 259 N.C. App. at 264, 815 S.E.2d at

 704.

¶ 51 “[W]e hold the trial court’s written order contains insufficient findings to allow

 this Court to determine whether it properly considered all of the factors required by

 N.C.G.S. § 7B-2501(c).” V.M., 211 N.C. App. at 392, 712 S.E.2d at 216. “Accordingly,

 the dispositional order is deficient, and we remand for further findings of fact to
 IN RE: J.A.D.

 2022-NCCOA-259

 Opinion of the Court

 address [each of the N.C. Gen. Stat. § 7B-2501(c) factors].” I.W.P., 259 N.C. App. at

 264, 815 S.E.2d at 704.

 III. Conclusion

¶ 52 The petition in this case was not defective because North Carolina law does

 not require a charging instrument to name the specific identity of a victim to charge

 the crime of extortion. The trial court did not err by denying Jeremy’s motion to

 dismiss because First Amendment jurisprudence did not require the State to show

 that Jeremy threatened unlawful physical violence, and because the evidence

 presented at trial did not fatally vary from evidence alleged in Jeremy’s juvenile

 petition.

¶ 53 However, the trial court failed to include the burden of proof in its written

 adjudication order as required by N.C. Gen. Stat. § 7B-2411. We vacate and remand

 the trial court’s adjudication order for additional findings of fact in compliance with

 section 7B-2411, if such findings are possible.

¶ 54 Because we vacate the adjudication order, we vacate the trial court’s

 subsequent disposition order. Independent grounds also exist to warrant vacating

 and remanding the disposition order. Additionally, the trial court failed to make

 sufficient findings of fact showing that it considered each of the five factors listed in

 N.C. Gen. Stat. § 7B-2501(c). The trial court is permitted on remand to hold a new

 dispositional hearing to hear additional evidence as needed to appropriately consider
 IN RE: J.A.D.

 2022-NCCOA-259

 Opinion of the Court

the five N.C. Gen. Stat. § 7B-2501(c) factors.

 NO ERROR IN PART, VACATED AND REMANDED IN PART.

 Judges ZACHARY and WOOD concur.